798 F.2d 491
 255 U.S.App.D.C. 1, 14 Bankr.Ct.Dec. 1104,
Bankr. L. Rep. P 71,297
 In re AOV INDUSTRIES, INC., et al.
Hubert R. BRUCE, Appellant,
v.
AOV INDUSTRIES, INC., et al., Appellees.
In re AOV INDUSTRIES, INC., et al.
Hubert R. BRUCE, Appellant,
v.
William J. PERLSTEIN, Disbursing Agent for the AOV
Industries Fund, Appellee.
 Nos. 85-5610, 85-5343.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 10, 1986.
Decided Aug. 8, 1986.
 
 On Appeal from the United States District Court for the District of Columbia (Civil Action Nos. 84-0335, 83-3365).
 Edward L. Genn, Washington, D.C., for appellant.
 Max O. Truitt, Jr., with whom Carol H. Fishman, was on brief for appellees AOV Industries Fund and Wilmer, Cutler & Pickering, and Alan S. Tenenbaum, Washington, D.C., was on brief, for appellee William J. Perlstein.
 Before WALD, MIKVA and STARR, Circuit Judges.
 Opinion for the Court filed by Circuit Judge MIKVA.
 MIKVA, Circuit Judge:
 
 
 1
 These consolidated cases make up the third appeal to this court involving the bankruptcy and reorganization of AOV Industries. In AOV I, we dismissed Hubert R. Bruce's appeal of the Reorganization Plan ("the Plan"), finding that his objections were moot because the Plan had been substantially consummated. In re AOV Industries, 792 F.2d 1140 (D.C.Cir.1986). In AOV II, 797 F.2d 1004 (D.C.Cir.1986), also released today, we remanded the case to the district court with an order to reconsider whether the law firm of White & Case had a conflict of interest in acting as general counsel to AOV.
 
 
 2
 The appeals decided in this opinion focus on the role played by the law firm of Wilmer, Cutler & Pickering ("WC & P" or "Wilmer") in these Chapter 11 proceedings. Case number 85-5610 concerns a challenge by appellant Bruce to the legal fees awarded to WC & P by the bankruptcy court. Number 85-5343 involves a challenge both to the appointment of Wilmer as counsel to the Disbursing Agent, and to a sanction imposed on Bruce by the district judge. Because we find that Wilmer apparently violated the Bankruptcy Code by simultaneously representing more than one party during the proceedings, we vacate the fee award in 85-5610 and remand for further consideration. In 85-5343, however, we affirm both the decision to dismiss the challenge to the Wilmer appointment, and the decision to sanction Bruce for unjustifiably failing to pursue his appeal.I.
 
 
 3
 Most of the pertinent facts are set forth in AOV I and AOV II, and will not be repeated here. AOV Industries and its subsidiaries filed for voluntary bankruptcy on November 6, 1981. Soon after the petition was filed, several creditors' committees were formed, including the Alla-Ohio Committee ("the Committee"), which was composed of unsecured creditors of an AOV subsidiary. On November 24, 1981, the bankruptcy court authorized the Committee to retain Wilmer, Cutler & Pickering as its counsel. See 11 U.S.C. Sec. 1103(a) (1982). The lawyer primarily responsible for representing the Committee was William J. Perlstein, a WC & P partner.
 
 
 4
 In its application to the court to become Committee counsel, Wilmer acknowledged that it represented other creditors of AOV. It maintained, however, that it was not representing any other creditor in matters related to the AOV bankruptcy. Under the pre-1984 version of Sec. 1103(b) of the Bankruptcy Code (which controls this case), a law firm that represents a creditors' committee is prohibited from simultaneously representing "any other entity in connection with the [bankruptcy] case." Cf. AOV II, at 1010-14 (discussing similar Code section).
 
 
 5
 The activities that led to the dispute in this appeal are as follows: the Alla-Ohio Committee and its lawyers were actively involved in negotiating a Disclosure Statement and Reorganization Plan for AOV. An amended Plan was approved by the bankruptcy court on June 30, 1983, and one month later the district court affirmed the confirmation. In re AOV Industries, 31 B.R. 1005 (D.D.C.1983). Bruce challenged the Plan in this court, but the panel dismissed his claims as moot. AOV I, at 1146-50.
 
 
 6
 After the Plan was confirmed, WC & P and the other lawyers and accountants who had contributed to the reorganization filed applications for fees, to be paid from the Debtor's estate. See 11 U.S.C. Sec. 330(a) (1982) ("Compensation of officers"). Wilmer originally asked for roughly $392,000 for its work on behalf of the Alla-Ohio Committee; after extensive negotiations with AOV, WC & P agreed to reduce its request to $325,000. Bruce objected to the Wilmer application.
 
 
 7
 After two days of hearings, the bankruptcy court approved Wilmer's reduced fee request in full. As discussed in AOV II, the judge used the "lodestar" method for calculating the proper level of fees. AOV II, at 1007; see also Copeland v. Marshall, 641 F.2d 880 (D.C.Cir.1980). The judge concluded that the Wilmer request was justified, even though the aggregate fees awarded to all professionals consumed a large percentage of the estate.
 
 
 8
 On appeal, the district court affirmed the award. In re AOV Industries, No. 84-0335, mem. op. (D.D.C. Mar. 25, 1985) (the "March 25 Decision"). The court rejected Bruce's claim that WC & P should have been disqualified because of its representation of other creditors while it represented the Committee. The judge found that Bruce had raised only "bald assertions ... without highlighting any particulars" of a conflict of interest. Id. at 5. She also rejected Bruce's claim that the bankruptcy court should have appointed an independent examiner to analyze all the fee requests. In number 85-5610, Bruce asks this court to overturn the district court's affirmance of the Wilmer award.
 
 
 9
 While the war on fees was being waged in one action, Bruce decided to attack on another front. The approved Plan provided for the appointment of a Disbursing Agent ("the Agent") to manage the AOV estate during reorganization. Among other things, the Agent's job was to recapture preferential payments, invest any money collected, and distribute assets to the creditors. The Plan explicitly provided that the Agent was free to retain himself or his law firm as counsel. Shortly before the Plan was confirmed, the various creditors' committees met and chose William Perlstein of the Alla-Ohio Committee and WC & P to be the Disbursing Agent. Perlstein petitioned the court for permission to retain WC & P as Agent's counsel; the appointment was confirmed on July 18, 1983.
 
 
 10
 Bruce moved to set aside the order appointing counsel, arguing, inter alia, that Wilmer should have been disqualified because of a conflict of interest created by the firm's representation of the Alla-Ohio Committee. After a hearing the bankruptcy judge rejected the motion, finding "no established conflict of interest or any reason why the original order of this court appointing counsel should be set aside." Transcript of Judge's Ruling, No. 81-0617, at 5 (Bankr.D.C. Sept. 7, 1983).
 
 
 11
 On September 19, 1983, Bruce filed a notice of appeal in the district court. He later filed a Designation of Record and a Statement of Issues, and the district court entered the appeal on its docket on November 10. Even though Bruce was required to file a brief within 15 days after the appeal had been docketed, see Bankr. Rule 8009(a)(1), he did not do so; in fact, appellant took no action to prosecute his claim for the next ten months.
 
 
 12
 Finally on August 24 of the following year, the district court, understandably perturbed, ordered Bruce to file a motion to support his appeal or face dismissal. Rather than file the required motion, appellant moved to stay the appeal until some of the related cases involving the reorganization were decided. He argued that once the issues raised in the related actions were resolved, it might not be necessary to reach the questions raised in the instant case. Bruce claimed that his appeal of the WC & P appointment was simply an attempt to avoid waiving his right to contest the issue in any future action. The Disbursing Agent filed a memorandum asking that the appeal be dismissed; Bruce did not file a response.
 
 
 13
 The district court dismissed the appeal. In re AOV Industries, No. 83-3365, mem. op. (D.D.C. Nov. 30, 1984) (the "November 30 Decision"). The court ruled that dismissal was warranted on two grounds: Bruce's failure to respond to the motion to dismiss, see D.C.Local Rule 1-9(d) (1979), and the failure to file a brief as required by the Bankruptcy Rules, even in response to a court order. The court said that it:
 
 
 14
 ha[d] given appellant more than ample opportunity to litigate this action, to no avail. It is clear that appellant is simply unwilling to comply either with the Rules or the orders of the Court.
 
 
 15
 November 30 Decision at 5.
 
 
 16
 The district court then went on to review the merits of the appeal. It found Bruce's allegation of a conflict of interest completely unsupported--"[Bruce] has alleged no facts or cited to any legal authority," said the court. "The mere claim of a conflict is not enough." Id. at 6. Given appellant's conduct, the court concluded that the appeal was frivolous, and ordered Bruce to pay the Agent's costs and attorney's fees incurred in defending the appeal. After a round of briefing on the proper amount of fees, the court found appellant liable for $2,988.95. In case number 85-5343, Bruce challenges both the dismissal of the underlying appeal and the imposition of fees.
 
 II.
 A. The Fee Award
 
 17
 Appellant does not contest the method used by the bankruptcy court to calculate the Wilmer fee award: he does not claim that the lodestar procedure was improper, or that the billing rates used by the court were excessive. Instead, Bruce raises a series of claims that attack the district court's standard of review, the bankruptcy court's failure to appoint an independent examiner, and both courts' failure to reduce all professional fees so that more money would be available to the unsecured creditors. Most importantly, Bruce claims that both the bankruptcy and district courts erroneously failed to deny the WC & P fee application because the firm had a conflict of interest.
 
 
 18
 In reviewing the fee award, the district court stated that it could only overturn the bankruptcy court's factual findings if they were "clearly erroneous." March 25 Decision at 4. Bruce's first argument is that this was the wrong standard, that because bankruptcy courts are article I courts, their findings are only advisory. He claims that the district judge was obligated to engage in de novo review.
 
 
 19
 It is appellant's argument, not the district court's analysis, that is clearly erroneous. Bankruptcy Rule 8013 provides:
 
 
 20
 On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment.... Findings of fact shall not be set aside unless clearly erroneous....
 
 
 21
 This rule took effect on August 1, 1983, and applies to all cases pending at that time, unless injustice would otherwise result. The fee applications were filed on October 6-7, 1983, and thus the rule applies. See In re Mickel, 35 B.R. 28, 29 (Bankr.D.S.C.1983). As long as the bankruptcy court is conducting a core bankruptcy proceeding, see 28 U.S.C. Sec. 157(b)(2) (1982), its fact findings are entitled to great deference. See In re Morrissey, 717 F.2d 100, 104-05 (3d Cir.1983); In re Stop-N-Go of Maine, Inc., 38 B.R. 731, 734 (D.Me.1984); cf. AOV I, at 1145-46 (finding "substantial evidence" standard sufficient for district court review). The bankruptcy court's article I status does, of course, limit its authority. Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). That status, however, does not reduce it to a mere adjunct to the district court. Although Marathon restricts the scope of the bankruptcy court's power, the case is not nearly as sweeping as appellant suggests.
 
 
 22
 Bruce also continues to argue that the bankruptcy court was obligated to appoint an independent examiner to review the fee requests. We summarily rejected this claim in AOV II, and we do so again here. Even though the bankruptcy judge acknowledged that he made only "spot checks" of the WC & P application, the district court correctly found that he was not required to scrutinize every document submitted. March 25 Decision at 9-10; see Copeland, 641 F.2d at 903 ("It is neither practical nor desirable to expect the trial court judge to have reviewed each paper in [a] massive case file...."). The bankruptcy judge was intimately familiar with Wilmer's work in this case, and relied on both the application and his own notes in setting fees. We find that the decision to forgo the costs of an extra level of review was eminently reasonable. See also Bankr. Rule 9031 (precluding appointment of special masters).
 
 
 23
 Appellant's second line of attack is that the WC & P award should be eliminated because the firm had a conflict of interest. Bruce claims that there were at least three types of conflict that infected these proceedings.
 
 
 24
 First, he says that Wilmer may have violated Code Sec. 1103(b) by representing the Alla-Ohio Committee while it was also representing other AOV creditors. See In re Broadcast Management Corp., 36 B.R. 519 (Bankr.S.D.Ohio 1983). Although Bruce offers no evidence to support the allegation, he argues that once he raised the conflict question, the burden was on WC & P to disprove the charge that it did no work for other creditors "in connection with" the reorganization. The district court rejected this claim, finding that Bruce had an obligation to present more than bare allegations of a conflict. March 25 Decision at 5.
 
 
 25
 We agree that Wilmer was not obligated to disprove the charges at that point in the proceedings. In its application to be appointed Committee counsel, WC & P asserted that its work for other creditors was unrelated to the bankruptcy; this was enough, we believe, to place the burden on Bruce to present some evidence that this statement was false. Despite ample time to conduct discovery, however, Bruce has been unable to make such a showing, or even identify particular clients or matters that might present a conflict.
 
 
 26
 If the burden of proof was on the lawyers in the first instance under Sec. 1103(b), disgruntled creditors would be able to delay a reorganization or liquidation by simply raising the possibility of a conflict of interest. The court would then have to delay the appointment of counsel, and the attorneys would have to divert their energies to disprove the charges at the expense of the debtor and other creditors. A party in Bruce's position should not be able to shift the costs of conducting discovery so easily. We think that the better rule is the one followed by the district court: once the firm has formally stated that it has complied with Sec. 1103(b), the burden shifts to the party alleging a conflict to produce evidence to support its claim. Because Bruce has not done so, we reject this prong of his appeal.
 
 
 27
 Bruce's second claim does not really allege a Wilmer conflict at all; appellant argues that the presence of a White & Case conflict of interest is grounds for reducing the WC & P fee. As discussed in AOV II, Bruce alleged that White & Case violated the Bankruptcy Code by simultaneously representing the Debtor and a creditor. Slip op. at 7-19. Bruce argues that the White & Case misbehavior was so patent that WC & P violated its duty of representation to the Committee by failing to investigate and object to the White & Case application.
 
 
 28
 There are two answers to this argument, either of which is sufficient to affirm the district court. First, Wilmer did object to White & Case's conduct as the reorganization progressed. The Alla-Ohio Committee took the lead in objecting to the White & Case fee guarantee that the law firm obtained from one of the AOV creditors. See AOV II, at 1009 (discussing guarantee). The guarantee was subsequently invalidated by the bankruptcy court. Wilmer also objected to the White & Case fee application, arguing that the request was excessive. While this protest was only marginally successful, it shows that WC & P worked vigorously on behalf of its client in monitoring Debtor's counsel.
 
 
 29
 The second response is that the only potential conflict the majority found in White & Case's behavior in AOV II was far from obvious. The court ordered a remand based on the existence of documents that raised questions about concurrent representation of Debtor and creditor; these documents, however, did not come to light until very late in the appeal of the White & Case award. Bruce claimed in AOV II that he had no way of knowing about these documents until they were discovered in the course of a separate lawsuit. Assuming appellant was blameless for not discovering the documents earlier, we cannot say that Wilmer was derelict in its duties in not discovering them either.
 
 
 30
 Bruce's third conflict claim is also unpersuasive. Appellant says that it was a conflict for WC & P to serve as counsel to one of the creditors' committees and then have a partner in the firm become the Disbursing Agent with WC & P as his counsel. Bruce points out that the Agent thus was responsible for reviewing the fee application submitted by his own firm. He suggests that the Wilmer application therefore did not receive the proper level of scrutiny, making the award inherently suspect.
 
 
 31
 We share appellant's unease at allowing the Disbursing Agent and the Committee counsel to hold interests that are so closely aligned. Obviously the Agent is in a poor position to pass judgment on the reasonableness of the Wilmer request, and to that extent, the application is subject to less scrutiny than it should be. See generally In re Bohack Corp., 607 F.2d 258, 264 (2d Cir.1979). We cannot agree, though, that this arrangement is grounds for upsetting the district court decision. The Disbursing Agent does not determine the proper level of fees, the bankruptcy judge does. Here the judge independently examined the application and supporting documents, compared them to his notes, and reached his own conclusion about the proper value of Wilmer's services. There is no indication that the Agent had any influence over the judge's decision other than the right to object to the applications, a right also held by creditors and the trustee. We find that the independence of the judge, coupled with the Agent's limited role in the process, not only prevented any actual conflict of interest, but also largely removed the appearance of impropriety.
 
 
 32
 It is true that in some cases a neutral Disbursing Agent can serve a valuable role: he or she may have information that would help the judge spot requests that are facially reasonable but excessive in fact. In this case, however, there was no lack of parties who had an incentive to challenge the Wilmer fees. All of the creditors' committees, plus AOV itself, would benefit if the WC & P award were reduced, yet none raised an objection. Given this, and given that this arrangement is not per se prohibited by either the Code or the Bankruptcy Rules, we are persuaded that WC & P's dual role does not present a sufficient conflict to justify vacating the award.
 
 
 33
 This dual role as Committee counsel and Agent's counsel presents a separate conflict of interest issue, however, one not addressed by either party. As discussed supra, Sec. 1103(b) squarely prohibits a lawyer from simultaneously representing both a creditors' committee and "any other entity in connection with the case." Cf. 11 U.S.C. Sec. 327(c) (1982) (forbidding concurrent representation of creditors and trustee). It is undisputed that WC & P became counsel to the Agent on July 18, 1983. But as its fee application clearly shows, Wilmer continued to represent and bill the Committee through the middle of September 1983. Application of Wilmer, Cutler & Pickering for Award of Final Compensation, No. 81-0617 (Oct. 7, 1983); see also Brief for Appellee Wilmer, Cutler & Pickering, No. 85-5610, at 3-4 (stating that firm represented Committee "continuously" from Nov. 1981 through Sept. 1983). William Perlstein in particular continued to perform tasks for the Committee during this period, while at the same time other Wilmer lawyers were working on Perlstein's behalf as Agent's counsel. Thus, from the middle of July 1983 through the middle of September 1983, the firm was representing both entities, in violation of the plain language of the statute.
 
 
 34
 The extent of the overlap does not appear to be great, but the cases construing Sec. 1103(b) make it clear that the rule is to be strictly construed. In Broadcast Management, supra, for example, the bankruptcy court disallowed part of a fee award to a lawyer who briefly represented both a creditors' committee and an individual creditor. The court accepted the claim that there had been both full disclosure and no actual conflict of interest, but said: "The language of [Sec. 1103(b) ] essentially states a malum prohibitum rule which allows for no exceptions." 36 Bankr. at 520. The court accordingly eliminated the compensation for the eleven days during which the lawyer represented both clients. Id.; see also In re Combustion Equipment Ass'n, 8 B.R. 566 (Bankr.S.D.N.Y.1981); In re Proof of the Pudding, Inc., 3 B.R. 645 (Bankr.S.D.N.Y.1980).
 
 
 35
 At oral argument, counsel for Wilmer maintained that there was no concurrent representation. This statement is both surprising and unfortunate. It is surprising because in addition to the fee application, counsel's own brief revealed that there was in fact an overlap. It is even more surprising because Perlstein, who obviously knew the timing of the representation, was seated at counsel table during argument, yet did not try to correct the misstatement. Wilmer's statement was also unfortunate: while Bruce had the duty to raise this issue in the first instance, the WC & P attorneys also had an obligation as officers of the court to reveal the apparent violation, and explain why, in their view, Sec. 1103(b) should not affect the award. If such an explanation had been forthcoming, it might have obviated the need for another chapter in the already lengthy legal history of the AOV reorganization.
 
 
 36
 Although it is clear from the record that there was concurrent representation, we note that this issue has not been briefed, nor the facts properly developed. We are thus poorly situated to assess the significance of the apparent violation, making further proceedings necessary. We therefore vacate the district court decision in this appeal, and remand for further consideration of the effect of the simultaneous representation on the Wilmer fee award. We have considered Bruce's remaining claims (including the assertion that the aggregate fee awards consumed an undue percentage of the estate) and find them meritless.
 
 B. Appointment of Wilmer as Agent's Counsel
 
 37
 In case number 85-5343, Bruce challenges the district court's dismissal of his appeal for failure to prosecute. Bruce's explanations for his failure to go forward are imaginative, but thoroughly unconvincing.
 
 
 38
 Bruce's most remarkable argument is that the Disbursing Agent shares the blame for the slow pace of the appeal, because he waited so long in seeking an order to dismiss. This claim is ludicrous; Bruce had the obligation to prosecute, not the appellee. Appellant also suggests that dismissal was improper because the district court had not yet scheduled a status call, or otherwise taken action in the case. Again, Bruce misunderstands his responsibility under the Bankruptcy Rules: regardless of the court's inaction, appellant had the responsibility to file a brief setting forth the grounds for his appeal, or risk dismissal. In re Har-Dway House Statuary, 76 F.R.D. 204 (E.D.Mo.1977).
 
 
 39
 Nor are we persuaded by Bruce's claim that this action should have been stayed rather than dismissed, given the existence of other appeals involving similar issues. The decision to grant a stay is discretionary, and we cannot say that the court abused its discretion here. See Hobson v. Hansen, 44 F.R.D. 18, 21 (D.D.C.1968), remanded on other grounds sub nom. Smuck v. Hobson, 408 F.2d 175 (D.C.Cir.1969); see also Fed.R.Civ.P. 62(g). After allowing the appeal to atrophy for more than nine months, failing to properly respond to a court order, and then failing to respond at all to a motion to dismiss, Bruce has no basis for complaining about the dismissal. See In re Har-Dway, 76 F.R.D. at 205 (dismissal of appeal proper where appellant failed to file brief, request extension of time, or respond to appellee's motion to dismiss); In re Webster, 47 B.R. 1012, 1013 (M.D.N.C.1985) (dismissal proper for ignoring briefing rules and failing to respond to motions).
 
 
 40
 In light of Bruce's conduct, we cannot say that the district court abused its discretion in requiring appellant to pay the Agent's costs and fees. A court clearly has the inherent power to sanction a party for abusive litigation practices. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). Bruce was on clear notice of what action was expected of him in the district court: the Bankruptcy Rules, the district judge, and the motion for fees made it crystal clear that Bruce had to move forward or face the consequences; at no point did appellant make an adequate response. Having concluded that this conduct justifies dismissal, we find that the less severe remedy of attorneys' fees is also proper. See Roadway Express Inc. v. Piper, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980).
 
 III.
 
 41
 The reorganization of AOV Industries was a long and difficult process. The various challenges raised by appellant have prolonged the uncertainty, and forced all parties to expend resources that could be more productively used elsewhere. Both AOV II and this appeal have now been remanded for further action on narrow issues, but we hope that the litigation surrounding this case has otherwise ended; it seems to us that all parties in interest would benefit from a cessation of hostilities. We hope that Bruce in particular will carefully weigh the merits of any future claims before returning to this court.
 
 
 42
 The confirmation of the fee award to Wilmer, Cutler & Pickering is vacated and remanded. The district court's dismissal of appellant's appeal in case number 85-5343 is affirmed, as is the order directing Bruce to pay the Agent's costs and fees.
 
 
 43
 It is so ordered.