Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued October 14, 2003      Decided January 16, 2004

No. 02–7086

THE ENGLISH-SPEAKING UNION,
APPELLANT

v.

JAMES JOHNSON, ET AL.,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00605)

————

*Frederic W. Schwartz Jr.* argued the cause and filed the briefs for appellant.

*M. Bradley Blommer* argued the cause for appellee. With him on the brief was *Roger A. Hayden II.*

Before: HENDERSON, TATEL, and ROBERTS, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* TATEL.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

TATEL, *Circuit Judge*: Exercising its appellate jurisdiction to review orders of the bankruptcy court, the district court dismissed an appeal for want of prosecution after the appellant missed the deadline for filing its brief. This appeal presents two questions: whether the district court had jurisdiction to dismiss the case in view of the fact that appellant had previously filed an appeal to this court, and if so, whether the district court properly exercised its discretion to dismiss for failure to prosecute. We conclude that the district court retained jurisdiction, but because it failed to explain why the harsh sanction of dismissal was necessary under the circumstances of this case, we reverse.

## I.

In 1993, The English-Speaking Union (ESU), an organization established to promote strong relations among Commonwealth nations, sold its Washington, D.C. branch headquarters to James and Geraldine Johnson, who, before paying ESU its note for part of the building's purchase price, filed for bankruptcy. In November 2001, the United States Bankruptcy Court for the District of Columbia entered a settlement order dismissing ESU's claim to funds from the estate and favoring appellee The Elm Company (Elm). *See English-Speaking Union v. Johnson*, No. 99–10076, slip op. at 1 (Bankr. D.D.C. Nov. 29, 2001).

Dissatisfied with the bankruptcy court's conclusions, ESU appealed to the United States District Court for the District of Columbia. The district court, exercising its appellate jurisdiction over final orders of the bankruptcy court, *see* 28 U.S.C. § 158(a) (2000 & Supp. III 2003), docketed ESU's appeal on March 29, 2002, starting the clock ticking on the fifteen days allotted for ESU to file its brief. *See* Fed. R. Bankr. P. 8009(a)(1) ("Unless the district court . . . excuses the filing of briefs or specifies different time limits . . . [t]he appellant shall serve and file a brief within 15 days after entry of the appeal on the docket. . . ."). Before that deadline arrived, ESU filed a motion for an extension of time, explaining that the transcript of the bankruptcy court proceedings was not yet complete. The district court granted

ESU's request and gave it until June 12, warning "*[t]here will be no further extensions.*" *English-Speaking Union v. Johnson*, No. 02–605, slip op. at 2 (D.D.C. Apr. 25, 2002).

On June 12, with the transcript still unavailable, ESU filed a second motion requesting an additional extension of time. Eight days later, the district court, unaware that ESU had submitted such a motion, dismissed ESU's appeal with prejudice for failure to prosecute. *English-Speaking Union v. Johnson*, No. 02–605, slip op. at 3 (D.D.C. June 20, 2002) (June Dismissal Order). In that order, the district court also dismissed ESU's "Second Amended Appeal," which ESU had filed after its original appeal to the district court in order to include in its appeal a May 2002 bankruptcy court order requiring ESU to pay certain costs incurred by its adversaries. The district court found that it lacked jurisdiction over this cost appeal because ESU had failed to file a timely notice of appeal. *Id.* at 2–3. On July 1, ESU filed a motion to vacate the June Dismissal Order pursuant to Federal Rule of Civil Procedure 60, arguing that it had in fact filed a pleading by the June 12 deadline and that its cost appeal was timely.

On July 19, while its motion to vacate was still pending in the district court, ESU appealed to this court, seeking reversal of the district court's June Dismissal Order. In August, after the appeal was docketed, the district court granted part of ESU's motion:

> For a reason unknown to the Court, counsel, or the Clerk's Office staff, Appellant's motion to amend the briefing schedule never appeared on the docket in this action, nor was the Court's copy sent to Chambers. As such, when the Court issued its June 20, 2002, Order dismissing the appeal for want of prosecution, it was without Appellant's motion to extend the time in which to file its brief. Despite the Court's admonition in its April 25, 2002, Order to counsel that no further extensions of the briefing schedule would be permitted, the Court would have allowed Appellant the opportunity to late file its brief, had it received Appellant's motion, because counsel should have a certified transcript when preparing briefing for an appeal.

*English-Speaking Union v. Johnson*, No. 02–605, slip op. at 2 (D.D.C. Aug. 27, 2002). The court thus resurrected ESU's appeal (but not its cost appeal) and gave the organization until September 9 to submit its brief. *Id.* at 2–4.

The September 9 deadline passed without ESU filing a brief. On September 12, the district court—on its own initiative—again dismissed ESU's appeal for want of prosecution. *English-Speaking Union v. Johnson*, No. 02–605, slip op. at 5 (D.D.C. Sept. 12, 2002) (September Dismissal Order). In response, ESU amended its appeal to this court to include this second dismissal order. Because that order constitutes a final judgment, we have jurisdiction to consider ESU's challenge here. *See* 28 U.S.C. § 158(d).

## II.

We begin with ESU's challenge to the district court's dismissal of its appeal. In ESU's view, the district court lacked jurisdiction to enter its September Dismissal Order because the organization's July notice of appeal to this court divested the district court of authority to issue orders in this case. Whether the district court retained jurisdiction to dismiss ESU's appeal following the organization's appeal to this court turns on whether ESU's motion to vacate was governed by Bankruptcy Rule 8015 (as the district court ruled) or Federal Rule of Civil Procedure 60 (as ESU argues)—a legal question that we review *de novo*. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Bankruptcy Rule 8015 expressly authorizes litigants to ask district courts exercising bankruptcy appellate jurisdiction to reconsider unfavorable rulings and tolls the time for seeking further review in the courts of appeals. It states:

> Unless the district court . . . by local rule or by court order otherwise provides, a motion for rehearing may be filed within 10 days after entry of the judgment of the district court. . . . If a timely motion for rehearing is filed, the time for appeal to the court of appeals for all parties shall run from the entry of the order denying rehearing or the entry of a subsequent judgment.

Fed. R. Bankr. P. 8015. If despite this tolling provision a litigant files an appeal while the Rule 8015 motion is pending, the rules of appellate procedure postpone appellate review until the district court decides the motion: "A notice of appeal filed after the district court . . . announces or enters a judgment, order, or decree—but before disposition of the motion for rehearing [under Bankruptcy Rule 8015]—becomes effective when the order disposing of the motion for rehearing is entered." Fed. R. App. P. 6(b)(2)(A)(i). Therefore, district courts retain jurisdiction over pending Rule 8015 motions whether or not the litigant simultaneously seeks appellate court review.

Federal Rule of Civil Procedure 60 also enables parties to challenge adverse district court decisions. It authorizes district courts to correct clerical errors, *see* Fed. R. Civ. P. 60(a), or to relieve parties from judgments in cases of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud, among other reasons, *see* Fed. R. Civ. P. 60(b). Like Bankruptcy Rule 8015 motions, Rule 60 motions filed within ten days of judgment toll the time for appealing to the court of appeals and preclude appellate review during their pendency. Federal Rule of Appellate Procedure 4 provides:

> If a party timely files in the district court [a Rule 60 motion within ten days after judgment is entered], the time to file an appeal runs for all parties from the entry of the order disposing of the . . . motion. . . . If a party files a notice of appeal after the [district] court announces or enters a judgment—but before it disposes of any motion [for relief under Rule 60 if the motion is filed no later than ten days after judgment is entered]—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

Fed. R. App. P. 4(a)(4). This rule, however, does not apply to challenges to district court bankruptcy appellate orders. *See* Fed. R. App. P. 6(b)(1)(A) (stating that Federal Rule of Appellate Procedure 4(a)(4) does not apply to appeals from

district court orders when the court acts in its bankruptcy appellate capacity). As a result, appeals court review could begin, at least in theory, before the district court disposes of the Rule 60 motion, which in turn would divest the district court of jurisdiction to grant the motion. *See Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) (stating that a district court may consider but not grant a pending Rule 60(b) motion while appellate review is ongoing unless the court of appeals remands the case).

In this case, even though ESU filed its motion to vacate pursuant to Rule 60, the district court held that Bankruptcy Rule 8015 represented the only post-judgment mechanism available to the organization. *See September Dismissal Order*, No. 02–605, slip op. at 3 n.3. Treating ESU's filing as a Rule 8015 motion, the court therefore concluded that ESU's July notice of appeal never took effect and that the court retained jurisdiction to decide ESU's motion to vacate, establish a new briefing schedule, and again dismiss ESU's appeal. *Id.* at 3–4.

Objecting to the district court's decision, ESU argues that Rule 8015 cannot be the exclusive vehicle for challenging district court judgments because Bankruptcy Rule 9024, which provides that "Rule 60 F.R. Civ. P. applies in cases under the [Bankruptcy] Code," allows disappointed litigants to file Rule 60 motions in the district court. Fed. R. Bankr. P. 9024. According to ESU, because its motion to vacate was based on clerical error—the disappearance of its June 12 filing—Rule 60 represented the organization's only option for seeking district court reconsideration.

Although it is true that Rule 9024 refers to "cases under the Code," Fed. R. Bankr. P. 9024, the advisory committee note suggests that Rule 60 applies in narrower circumstances in the bankruptcy context: "For the purpose of this rule all orders *of the bankruptcy court* are subject to Rule 60 F.R. Civ. P." Fed. R. Bankr. P. 9024 advisory committee's note (emphasis added); *see also In re Conn Aire, Inc.*, 91 B.R. 462, 462 n.2 (M.D. Tenn. 1988) (concluding that Rule 9024 applies Rule 60 only to challenges to bankruptcy court or-

ders). Our review of the cases, moreover, indicates that Rule 9024 is generally used in bankruptcy court proceedings, not in district courts. Reading Rule 9024 to apply only to bankruptcy court proceedings is also supported by Bankruptcy Rule 8002, which postpones the time for appealing from the bankruptcy court to the district court when a Rule 9024 post-trial motion is pending—just as Federal Rule of Appellate Procedure 6 tolls appeals court review when a Rule 8015 motion is pending in the district court acting in its bankruptcy appellate capacity. *Compare* Fed. R. Bankr. P. 8002(b)(4), *with* Fed. R. App. P. 6(b)(2)(A)(i). And as the district court pointed out, the Fifth Circuit has squarely held that Bankruptcy Rule 8015 offers litigants the only means for challenging district court bankruptcy appellate orders. *See Butler v. Merchants Bank & Trust Co.*, 2 F.3d 154, 155 (5th Cir. 1993) ("When the district court is acting as an appellate court in a bankruptcy case, 'Bankruptcy Rule 8015 provides the sole mechanism for filing a motion for rehearing.'" (quoting *In re Eichelberger*, 943 F.2d 536, 538 (5th Cir. 1991))).

In the end, we need not resolve this issue because no matter how ESU styled its motion to vacate, circuit precedent prevents litigants from creating the kind of gap in appellate tolling rules that ESU advocates. As discussed above, ESU's jurisdictional argument exploits a purported opening created by the appellate rules—specifically Federal Rule of Appellate Procedure 6, which renders Federal Rule of Appellate Procedure 4(a)(4) inapplicable to bankruptcy appeals. We filled a similar void in *Moy v. Howard University*, 843 F.2d 1504 (D.C. Cir. 1988) (per curiam), holding that "the timing of [a post-judgment] filing, without more, determines whether it tolls the time limit on filing an appeal." *Id.* at 1506. We think that resolution applies here as well.

In *Moy*, we considered the timeliness of an appellant's notice of appeal in the non-bankruptcy context under the pre–1993 procedural rules. At that time, Federal Rule of Appellate Procedure 4 tolled the time for seeking appellate review while a Rule 59(e) motion to amend a judgment—but not a Rule 60(b) motion for relief from judgment—was pending in the district court. *See* Fed. R. App. P. 4(a)(4) advisory

committee's note (1993 Amendment). Because of this omission, the timing of appellate review could have turned on how a post-trial motion was characterized. If the motion was considered a Rule 59 motion, the party had to file it within ten days, *see* Fed. R. Civ. P. 59(e), and the motion's pendency tolled the time for seeking appellate review, *see Moy*, 843 F.2d at 1505. By contrast, if the motion was considered a Rule 60(b) filing, the litigant had one year or more to file the post-judgment motion, *see* Fed. R. Civ. P. 60(b), but the pendency of the motion neither tolled the time for filing a notice of appeal, *see Moy*, 843 F.2d at 1505, nor precluded appellate review, *see Hoai*, 935 F.2d at 312. Thus, litigants could argue endlessly over whether the court of appeals had jurisdiction (or, more important for purposes of this case, whether the district court retained jurisdiction) based on whether a motion challenging the correctness of the district court order had a "Rule 59" or "Rule 60" label. Because "the particular label given to such a motion is of no consequence," we held that "if a post-judgment motion that properly could be construed as a Rule 59(e) motion satisfies the 10–day service requirement, it is to be treated as a Rule 59(e) motion for tolling purposes." *Moy*, 843 F.2d at 1505–06 (footnote omitted).

ESU's decision to file under Rule 60 rather than Bankruptcy Rule 8015 seeks to re-create the kind of void that *Moy* (and later the 1993 amendment to FRAP 4) closed. Applying *Moy* to the bankruptcy context, then, we hold that irrespective of how parties characterize their motions for reconsideration in bankruptcy appeals, a motion for reconsideration filed within Bankruptcy Rule 8015's ten-day limit should be treated as an 8015–motion that postpones appellate review during its pendency. Because ESU filed its motion to vacate within ten days of the district court's June Dismissal Order, we will therefore consider it a Rule 8015 motion that tolls the time for seeking appellate review. Thus, ESU's notice of appeal did not take effect while its motion to vacate remained pending in the district court, leaving that court with jurisdiction to grant ESU's motion for post-judgment relief and again to dismiss the organization's appeal.

### III.

Both Bankruptcy Rule 8001 and Local Rule 8009–1 authorize district courts in this jurisdiction to dismiss bankruptcy appeals when appellants fail to file briefs on time. *See* Fed. R. Bankr. P. 8001(a) ("An appellant's failure to take any step other than timely filing a notice of appeal . . . is ground only for such action as the district court . . . deems appropriate, which may include dismissal of the appeal."); D.D.C. Local Bankr. R. 8009–1 ("If, after an appeal has been noted . . . , the appellant fails to serve and file a brief within the time required by Bankruptcy Rule 8009, the District Court may, upon motion of the appellee . . . , or upon its own order, dismiss the appeal for failure to comply with [the time limit]."). We review dismissals for failure to prosecute for abuse of discretion. *See Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 186 (D.C. Cir. 1985).

In reviewing ESU's challenge to the district court's dismissal of its case, we balance two important yet competing interests. On the one hand, "our judicial system[ ] [reflects a] strong presumption in favor of adjudications on the merits." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995). As the Supreme Court has explained, "[i]t is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities." *Foman v. Davis*, 371 U.S. 178, 181 (1962). Therefore, dismissal, "the death knell of the lawsuit," *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (internal quotation marks omitted), should be used only as a last resort. *See Trakas*, 759 F.2d at 186–87.

On the other hand, district courts need powerful tools to manage their dockets, prevent undue delay, and sanction those who abuse the system. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962); *Shea v. Donohue Constr. Co.*, 795 F.2d 1071, 1074 (D.C. Cir. 1986). Strictly enforcing procedural rules ensures both that cases are adjudicated efficiently and that litigants argue their causes on a level playing field. Moreover, district courts need authority to

dispense severe sanctions "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S 639, 643 (1976) (per curiam).

In the context of dismissals of bankruptcy appeals for non-jurisdictional procedural violations, as here, several of our sister circuits have reconciled these goals by recognizing a district court's power to dismiss appeals for want of prosecution, but at the same time requiring district courts to justify dismissal under the particular circumstances of each case. In *In re Scheri*, 51 F.3d 71 (7th Cir. 1995), for example, the Seventh Circuit held that district courts could dismiss appeals under Bankruptcy Rule 8001 for failure to comply with Bankruptcy Rule 8009's time deadlines for filing briefs only upon a showing of bad faith, negligence, or indifference, and only after adequately explaining the basis for the dismissal. *Id.* at 74–75. The court noted that "[w]hen district courts have found dismissal to be the appropriate sanction because the record demonstrates a consistent pattern of dilatoriness or multiple failures to comply with deadlines, courts of appeals have not hesitated to affirm the district court's exercise of discretion." *Id.* at 74. In that case, the court vacated the dismissal because the district court failed to describe the appellant's misconduct adequately and to assess its effect on the case. *Id.* at 75–76. Without sufficient explanation from the district court—the court "in the best position to assess the nature of the delay, the motivations of the parties and their attorneys, and the impact of the delay on the court's calendar," *id.* at 75—the Seventh Circuit found itself unable to determine whether the district court's conclusions could survive even highly deferential abuse of discretion review, *id.* at 76.

The Fourth Circuit requires district courts to channel their Rule 8001 discretion to dismiss in a similar manner. *See In re SPR Corp.*, 45 F.3d 70, 74 (4th Cir. 1995). According to the Fourth Circuit, "a district court [normally must] consider and balance all relevant factors, including the good faith of the appellant . . . and possible prejudice to other parties. . . .

[T]hroughout the process a district court should bear in mind that, although dismissal is an option, less drastic alternatives must be considered. . . ." *Id.* Other courts of appeals apply like standards. *See, e.g., In re Fitzsimmons*, 920 F.2d 1468, 1474 (9th Cir. 1990) (finding that a district court must consider a party's possible bad faith and the availability of alternative sanctions except in egregious circumstances); *In re Beverly Mfg. Corp.*, 778 F.2d 666, 667 (11th Cir. 1985) (holding that the dismissal of a bankruptcy appeal is proper only when the appellant shows bad faith, negligence, or indifference).

While the factors identified by these decisions are relevant, we are reluctant to impose on district courts any hard-and-fast rule that compels them to mechanically apply a multi-element test before dismissing bankruptcy appeals. We think that district courts can achieve the proper balance between trying cases on the merits and managing their dockets efficiently by considering the circumstances before them and explaining why it is in the interest of justice to dismiss rather than to proceed to the merits. For example, was counsel's failure to file on time part of a pattern of negligent or willful disregard of court orders? Did the failure to file adversely affect the court's docket or prejudice other parties? And perhaps most important, would less drastic sanctions such as fining counsel be ineffective? As part of this inquiry, moreover, district courts will generally need to provide notice of the potential dismissal and an opportunity for the errant litigant to explain its conduct. Based on that explanation, the court can then determine the appropriate sanction and articulate its reasons for selecting its chosen course of action.

In our view, this approach not only properly calibrates the importance of deciding cases on the merits and preserving district courts' authority to control their dockets, but also ensures that this court is able to exercise its highly deferential review. As the Seventh Circuit explained:

> The district judge should be presumed to have acted reasonably, and reversal is warranted therefore only

if it is plain either that the dismissal was a mistake or that the judge did not consider factors essential to the exercise of a sound discretion.... We ask only for a sufficient explanation from the district court to permit us to fulfill our limited, but important, responsibilities. Deferential review cannot mean no review at all.

*Scheri*, 51 F.3d at 76 (citation and internal quotation marks omitted).

Requiring district courts to give notice and consider the circumstances underlying the procedural violation conforms to our own practice. When a party fails to file a brief on time, we ordinarily issue a show cause order, offering it an opportunity to explain. Based on that explanation, we decide whether to accept the late-filed brief or to impose a sanction, which can include dismissal. *Compare Piccolo v. Executive Office for the United States Attorneys*, No. 03–5004 (D.C. Cir. Nov. 25, 2003) (per curiam) (order accepting appellees' late-filed brief despite counsel's "inattentive . . . handling of [the] appeal [because] appellant has not shown any prejudice resulting from the tardy submission of appellees' brief"), *with Samuels v. Providence Hosp.*, No. 98–7013, 1999 WL 1215780, at *1 (D.C. Cir. Nov. 19, 1999) (per curiam) (dismissing an appeal after the appellant failed to provide "a sufficient justification for her failure to file her brief").

Applying these principles here, we think a fuller explanation was required to justify dismissal of ESU's appeal. In its September Dismissal Order, the district court stated:

It has been over five months since this Bankruptcy Appeal was filed. The Court has been extremely patient with [ESU] and has on two occasions provided additional time to submit briefing in this matter. The Court's wellspring of patience is now officially bankrupt. As such, the Court shall dismiss with prejudice this appeal.

No. 02–605, slip op. at 5. Although we certainly see how ESU could have tried the district court's patience—after all, it sought repeated extensions of time, usually at the eleventh hour, and baldly ignored the district court briefing schedule—

the organization actually missed only one court-imposed deadline. Yet because the district court offered ESU no opportunity to explain and made no findings about the circumstances surrounding ESU's failure to file by the September 9 deadline, we cannot tell whether the district court properly concluded that dismissal was warranted. We do not know, for example, whether the district court thought that, under all the circumstances of the case, ESU acted in bad faith by declining to file a brief based on an uncertain legal theory and simultaneously failing to advise the court of its reasons for not filing. Nor do we know whether the district court believed that ESU's procedural failing disadvantaged Elm's legal position or prejudicially delayed disposition of the Johnson bankruptcy estate. Nor, finally, do we know whether the district court considered alternative sanctions—such as fining counsel or requiring ESU to pay Elm's legal fees. Absent such explanation, we are unable to determine whether dismissing the case was, under the circumstances, a proper exercise of discretion.

Contrary to Elm's assertion, nothing in *In re AOV Industries, Inc.*, 798 F.2d 491 (D.C. Cir. 1986), requires a different result. Although that decision affirmed a dismissal of a bankruptcy appeal, the district court there, unlike here, ordered the appellant, who for ten months had taken no action to prosecute his appeal, to file his brief or face dismissal. *Id.* at 494. Not only did the appellant fail to respond properly to this second chance, but he even ignored a subsequent motion to dismiss. *Id.*

In closing, we emphasize that this opinion in no way limits the district court's range of options on remand. After considering ESU's explanation for its behavior, the court may well decide to accept ESU's brief, to impose an appropriate sanction on counsel, or even to dismiss the case with prejudice. Should the court again decide that dismissal is necessary, and should ESU then appeal, we will have the district court's reasoning before us as the basis for exercising our highly deferential review.

## IV.

This brings us finally to ESU's cost appeal. Although ESU filed a notice of appeal challenging the district court's June Dismissal Order, which dismissed ESU's cost appeal for lack of jurisdiction, it chose not to brief the cost issue here, claiming that it had filed the appeal only to preserve the issue in the event that we were to affirm the dismissal of the case. *See* Appellant's Br. at 7. At oral argument, Elm insisted that ESU's cost appeal is before us now, urging that we dismiss it in light of ESU's failure to argue its merits.

The parties' arguments on this issue, to put it mildly, leave something to be desired. The few sentences that ESU's brief devotes to this question are unsupported, and Elm, which had argued in its brief that only the district court's September Dismissal Order is before the court, switched its position at oral argument. In any event, because ESU asks us for no relief from the dismissal of the cost appeal at this time, we will neither consider whether the district court correctly dismissed that appeal nor decide whether ESU has now waived its right to challenge the dismissal altogether. *See United States v. Taylor*, 339 F.3d 973, 977 (D.C. Cir. 2003) (stating that an appellant waives his right to pursue issues that are ripe for consideration when he fails to raise them in his opening brief); *In re Grabill Corp.*, 983 F.2d 773, 775 (7th Cir. 1993) ("An appeal from a final judgment brings up for review by the appellate court all orders (except those that have become moot) rendered by the trial court previously in the litigation.").

## V.

The district court's judgment is reversed and the matter remanded for further proceedings consistent with this opinion.

*So ordered.*