Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued October 12, 2004     Decided November 30, 2004

No. 04-7006

KERRY FOX, *ET AL.*,
APPELLANTS

v.

AMERICAN AIRLINES, INC.,
APPELLEE

————

Appeal from the United States District Court
for the District of Columbia
(No. 02cv02069)

————

*Joel D. Joseph* argued the cause for the appellants.

*Ronald G. DeWald* argued the cause for the appellee.

Before: SENTELLE, HENDERSON and ROBERTS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Kerry Fox, his two sisters, Susan Fox and Janice Sterling, and a niece, Deirdre Ford–Aikin (appellants), appeal the district court's grant of American Airlines's motion to dismiss their amended complaint seeking damages and injunctive relief resulting from the airline's treatment of them during Kerry Fox's in-flight medical emergency and afterwards. They likewise appeal the district court's denial of their motion to vacate its judgment dismissing their suit. Because the district court acted within its discretion in both instances, we affirm.

## I.

In November 2001, the appellants boarded an American Airlines, Inc. (American) flight at Baltimore/Washington International Airport destined for Laredo, Texas.[1] During the flight Kerry Fox (Kerry), a diabetic, lapsed into severe insulin shock and, when his sisters' efforts to revive him proved unsuccessful, the plane made an emergency landing in Nashville, Tennessee. The appellants allege that, during Kerry's episode, the flight attendants offered him no medical assistance. They further allege that the entire emergency could have been avoided had American employees granted their request either to allow a family member to be seated near Kerry on the plane or to have the flight attendants monitor his condition in-flight.

Kerry was revived by emergency personnel on the ground in Nashville and, after being treated at a hospital, he was deemed fit to travel on to Laredo. The appellants did not complete the remainder of their journey, however, without experiencing further difficulties. They allege that, because of Kerry's medical emergency, they were searched "thoroughly" before boarding flights from Nashville to Dallas–Ft. Worth and from Dallas on to Laredo. Joint Appendix (J.A.) 23, ¶¶ 28–29. The trip home was "another nightmare." J.A. 23,

---

[1] This factual account is derived from the second amended complaint. *See Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001) (in reviewing grant of motion to dismiss, court "treat[s] the complaint's factual allegations as true").

¶ 30. They allege that American again targeted them for thorough searches as a result of the earlier emergency, that an American employee refused to board them on their Dallas to Baltimore flight because they again requested that a family member sit near Kerry and that, as a consequence, they were forced to take a later flight home.

On October 23, 2002, the appellants filed a four-count complaint against American, alleging: (I) gross negligence, (II) intentional infliction of emotional distress, (III) breach of contract and (IV) violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.* and accompanying federal regulations. On November 19, 2002, American filed a motion to dismiss the complaint, arguing, among other things, that the appellants' allegations implicated the Air Carrier Access Act (ACAA), 49 U.S.C. §§ 41705 *et seq.*, not the ADA. On November 21, 2002, the district court issued its "Standing Order" apprising the parties of their obligation to comply with local and federal rules of procedure, including Local Rule 7.[2] On December 2, 2002, the appellants took American's cue and amended their complaint to allege violations of the ACAA instead of the ADA. They also filed an opposition to American's motion to dismiss.

On December 6, 2003, American moved to dismiss the amended complaint but this time the appellants did not respond. Instead, on January 14, 2003, they filed a joint meet and confer statement and proposed scheduling order, which repeatedly referenced a pending "motion to dismiss." J.A. 3. On August 5, 2003, the district court granted American's motion to dismiss the amended complaint.

Relying on Local Rule 7(b) of the Rules of the United States District Court for the District of Columbia, *see* D.D.C. LOCAL RULE 7(b), the district court explained that "because the plaintiffs failed to respond to the defendant's second motion, the court treats the motion as conceded and grants the motion." Mem. Op., Granting Motion to Dismiss Amended Complaint, at 4, *reprinted in* J.A. 12. Having dismissed

---

[2] *See* Judge Urbina's Standing Order for Civil Cases, Nov. 21, 2002, at 6.

the amended complaint under Local Rule 7(b), the district court then noted that the appellants' opposition to American's motion to dismiss the *original* complaint did challenge American's contention that count IV failed to state a claim under the ADA. The district court concluded, however, that even if it treated the appellants' opposition as an opposition to American's motion to dismiss the *amended* complaint, it would nonetheless grant that motion with respect to count IV under Rule 12(b)(6) of the Federal Rules of Civil Procedure (FRCP). As the district court saw it, "because the defendant's argument that the ACAA does not create a private right of action is substantively correct, even if the court were to treat the plaintiffs' opposition to the defendant's first motion as an opposition to the defendant's second motion, the court's decision to grant the defendant's motion to dismiss Count IV would remain the same." J.A. 16.

The appellants subsequently moved under FRCP Rule 59(e) to vacate the district court's judgment, asserting two grounds. They claimed that the court's judgment should be vacated, first, because their counsel failed to receive electronic notice of American's second motion to dismiss and, second, because their amended complaint alleged a claim under the ACAA, which American was estopped from contesting. The district court concluded that neither argument required the court to vacate its judgment to prevent "manifest injustice," Mem. Op., Denying Motion to Alter or Amend Judgment, at 5, *reprinted in* J.A. 5, and consequently, denied the motion.

As to the appellants' first contention, the district court concluded that, despite their counsel's claimed ignorance, he should have known that a second motion lay pending. That the court uses an electronic filing system that automatically sends the parties e-mail notices when documents are filed, the district court explained, did not relieve counsel of his independent obligation to monitor the court's docket. And had he checked the docket, the court pointed out, he would have discovered the motion. The court further noted that, on January 15, 2003, counsel had filed a joint meet and confer statement and proposed scheduling order, which referred to a pending motion to dismiss. "[H]ad [plaintiffs' counsel]

checked the docket when filing the joint statement," the court observed, "he would have noticed that the defendant had filed a motion to dismiss the amended complaint approximately five and a half weeks earlier." J.A. 6. Moreover, said the district court, counsel should have realized that the pending motion he referenced in his statement related to the amended complaint, especially given that he should have been expecting an answer to it.

As to their second argument, the district court concluded that it did not constitute a proper basis to amend the judgment as it essentially recycled "claims that the court has already rejected." J.A. 7. The appellants then appealed both orders to us.

## II.

The appellants seek reversal of the district court's dismissal of their amended complaint for failing to comply with Local Rule 7(b). Local Rule 7(b)—as did its predecessor, Local Rule 108(b)—provides:

> Within 11 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.

D.D.C. LOCAL RULE 7(b). The Rule is a docket-management tool that facilitates efficient and effective resolution of motions by requiring the prompt joining of issues, *see FDIC v. Bender*, 127 F.3d 58, 67 (D.C. Cir. 1997); *cf. Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996) ("[Local] Rule 108(h) assists the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively."), and we review the district court's application of 7(b) for abuse of discretion. *See Bender*, 127 F.3d at 67.

In defending their failure to comply with Local Rule 7(b), the appellants offer nothing but an updated version of the

6

classic "my dog ate my homework" line. They claim that, as the result of a malfunction in the district court's CM/ECF electronic case filing system, their counsel never received an e-mail notifying him of American's motion to dismiss their amended complaint. Imperfect technology may make a better scapegoat than the family dog in today's world, but not so here. Their counsel's effort at explanation, even taken at face value, is plainly unacceptable. Regardless whether he received the e-mail notice, he remained obligated to monitor the court's docket. *See United States ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2d Cir. 2001) ("[P]arties have an obligation to monitor the docket sheet to inform themselves of the entry of orders. . . ."), *cert. denied*, 535 U.S. 929 (2002); *cf. Norgaard v. DePuy Orthopaedics, Inc.,* 121 F.3d 1074, 1075 (7th Cir. 1997) (ignorance of other court's docket "is nothing but negligence, which does not justify untimely action"). Indeed, one would think that, at the very least, his failure to receive a timely answer to the amended complaint would have aroused his suspicion, thus prompting him to check the court's docket for any recent filings. *See* FED. R. CIV. P. 15(a) ("A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."). Accordingly, it is difficult to understand how counsel did not recognize that the "pending" motion to dismiss he repeatedly referenced in the joint meet and confer statement and proposed scheduling order—filed more than one month after American filed its second motion to dismiss—related to the *amended* complaint. In dismissing the appellants' suit, the district court held that "because the plaintiffs failed to respond to the defendant's second motion, the court treats the motion as conceded and grants the motion." Mem. Op., Granting Motion to Dismiss Amended Complaint, at 4, *reprinted in* J.A. 12. This court has yet to deem such a straightforward application of Local Rule 7(b) an abuse of discretion and, based on the above, we see no reason for doing so here. *See Bender*, 127 F.3d at 67–68.

Last term we held that, before dismissing a bankruptcy appeal under Rule 8001 of the Federal Rules of Bankruptcy Procedure[3] and Local Bankruptcy Rule 8009–1,[4] the district court must typically "consider[ ] the circumstances before [it] and explain[ ] why it is in the interest of justice to dismiss rather than to proceed to the merits." *English–Speaking Union v. Johnson*, 353 F.3d 1013, 1022 (D.C. Cir. 2004) (hereinafter *ESU*). So that the district court's inquiry is an informed one, we also insisted that the appellant be notified and given an opportunity to be heard. *Id.* at 1022. We reasoned that "[t]his approach"—which mirrors our own for evaluating whether to accept late-filed briefs—"not only properly calibrates the importance of deciding cases on the merits and preserving district courts' authority to control their dockets, but also ensures that this court is able to exercise its highly deferential review." *Id.*

Our holding in *ESU*, however, did not purport to extend beyond "dismissals of bankruptcy appeals for nonjurisdictional procedural violations," *see id.* at 1021, and with good reason. A district court reviewing a bankruptcy appeal has a "completed" record before it and thus the procedure we outlined in *ESU* tends to strike a proper balance between the " 'strong presumption in favor of adjudications on the mer-

---

[3] Bankruptcy Rule 8001 provides in pertinent part: "An appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal." FED. R. BANKR. P. 8001(a).

[4] Local Rule 8009–1 provides:

If, after an appeal has been noted and the appellant has complied with Bankruptcy Rule 8006, the appellant fails to serve and file a brief within the time required by Bankruptcy Rule 8009, the District Court may, upon motion of the appellee filed in the office of the Clerk of the District Court, or upon its own order, dismiss the appeal for failure to comply with Bankruptcy Rule 8009.

D.D.C. LOCAL BANKR. RULE 8009–1.

its,'" *id.* at 1021 (quoting *Shepherd v. Am. Broad Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995)), and the need for the district court to have at its disposal "powerful tools to manage [its] docket[ ], prevent undue delay, and sanction those who abuse the system," *ESU*, 353 F.3d at 1021 (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962); *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074 (D.C. Cir. 1986)). We reconcile these competing interests differently in the trial setting where the district court may well have before it multiple opposed motions—"any and all" of which are subject to Local Rule 7(b). *Bender*, 127 F.3d at 67. Requiring it to provide notice, an opportunity to explain and weigh alternatives before enforcing Rule 7(b) would hinder effective docket management. *See ESU*, 353 F.3d at 1021 ("Strictly enforcing procedural rules ensures both that cases are adjudicated efficiently and that litigants argue their causes on a level playing field."); *see also Bender*, 127 F.3d at 67. Accordingly, as we have often observed, "[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule." *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997); *see also Bender*, 127 F.3d at 68; *Geller v. Randi*, 40 F.3d 1300, 1304–05 (D.C. Cir. 1994). We do so again here.

The appellants also attempt to revive count IV of their complaint, first, by invoking non-mutual offensive collateral estoppel (a.k.a. issue preclusion) to assert that American is barred from denying the existence of an implied right of action under the ACAA and, second, by arguing that, in any event, such an implied right does exist. The district court's view that count IV's allegations failed to state a claim, however, constitutes dictum. It discussed the issue only to observe that, had the appellants not conceded American's second motion to dismiss by failing to respond timely, it would have nonetheless dismissed count IV under FRCP Rule 12(b)(6).

Finally, the appellants question the district court's denial of their FRCP Rule 59(e) motion but do not argue the point.

They allege in their Statement of Issues that the district court erred in denying their motion but elaborate no further. Such a conclusory assertion typically does not warrant review. *See, e.g., Wash. Legal Clinic for the Homeless v. Barry,* 107 F.3d 32, 39 (D.C. Cir. 1997) (issue not properly raised where addressed in "cursory fashion" supported only with "bare-bones arguments" (internal quotation marks omitted)). In any event, we think the district court did not abuse its discretion in denying the motion. *See Ciralsky v. CIA,* 355 F.3d 661, 668, 671 (D.C. Cir. 2004).

"A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (internal quotation marks omitted); *accord Ciralsky,* 355 F.3d at 671. We can hardly say that the district court abused its discretion in declining to vacate its judgment of dismissal to prevent "manifest injustice" flowing from the appellants' failure to receive notice given that, as discussed above, the dismissal of their suit might have been avoided through the exercise of due diligence. *See Ciralsky,* 355 F.3d at 673 ("We also cannot find that the district court abused its discretion in concluding that manifest injustice does not exist where, as here, a party could have easily avoided the outcome . . . ." (internal quotation marks and brackets omitted)). Nor do we find any abuse of discretion in the district court's refusal to vacate its judgment based on their allegedly valid ACAA claim as this argument was available to them earlier. *See id. Cf. Kattan by Thomas v. Dist. of Columbia,* 995 F.2d 274, 276 (D.C. Cir. 1993) ("Ordinarily Rule 59 motions . . . are not granted by the District Court where they are used by a losing party to request the trial judge to reopen proceedings in order to consider a new defensive theory which could have been raised during the original proceedings.").

10

*  *  *

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*