In re Robert E. HARRIS, Debtor,

Robert E. Harris, Appellant,

Albany County Office, Appellee,

Mark Swimelar, Trustee.

Docket Nos. 04–2164–BK(L), 04–3652–BK(CON).

United States Court of Appeals, Second Circuit.

Argued: May 12, 2006.

Decided: Sept. 18, 2006.

---

Robert E. Harris, Albany, NY, pro se.

Tonia L. Summers, Assistant County Attorney (Michael C. Lynch, County Attorney on the brief), Albany, NY, submitted a brief for Appellee.

Before: SOTOMAYOR, WESLEY, and HALL, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Debtor-appellant Robert E. Harris appeals from a judgment of the United States District Court for the Northern District of New York (Sharpe, J.), dated June 14, 2004, dismissing debtor's appeal from orders of the Bankruptcy Court for the Northern District of New York (Littlefield, B.J.), dated July 21, 2003 and October 15, 2003, for failure to include in the designation of record on appeal the transcript of a June 23, 2003 bankruptcy hearing as required by Federal Rules of Bankruptcy Procedure 8001 ("Rule 8001") and 8006 ("Rule 8006"). Harris also appeals the district court's denial of his motion for reconsideration of the June 14, 2004 dismissal order. We hold that the district court abused its discretion under Rule 8001 when it dismissed debtor's case for failure to include the June 23 transcript in the designation of record without first giving debtor notice and opportunity to respond and without determining whether a lesser sanction would have been appropriate. The judgment of the district court is VACATED, and the case REMANDED for proceedings not inconsistent with this opinion.

## BACKGROUND

Debtor owned commercial rental properties at 323 State Street ("323 State Street") and 38 South Main Avenue ("38 South Main") (collectively, "the Properties") in Albany, New York. Because Harris fell behind in his property tax payments on the Properties in the 1990s, the County of Albany (the "County") brought a tax foreclosure action against him in 1997 in County Court and obtained final judgment in its favor on December 26, 2000. The County soon thereafter executed and recorded the deeds to the Properties. Harris appealed the foreclosure judgment and, on April 17, 2001, the Albany County Court amended its December 2000 judgment nunc pro tunc to indicate that the deeds conveyed to the County full and complete title to both Properties.

On January 24, 2001, Harris filed a voluntary bankruptcy petition pursuant to Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 1301–1330, in which he included his ownership interests in 323 State Street and 38 South Main. Upon the filing of this petition, Harris obtained an automatic stay of all federal and state proceedings against the bankruptcy estate, including the Properties. See 11 U.S.C. § 1301(a). A trustee for the estate, Mark Swimelar, was then appointed.

The County responded to the bankruptcy petition by moving to lift the stay on the two foreclosed Properties. On September 24, 2002, the bankruptcy court granted the County's motion, concluding that the two Properties were not part of the bankruptcy estate and hence not subject to the automatic stay. Harris then

appealed the decision of the bankruptcy court to the district court for the Northern District of New York (Hurd, J.) on the grounds that because the foreclosure action was a preferential or fraudulent transfer under 11 U.S.C. §§ 547 and 548, the bankruptcy court erred in lifting the stay concerning both Properties. In a November 8, 2002 decision, Judge Hurd reversed the lower court's decision, holding that it had erred by not considering whether the foreclosure action was a preferential or fraudulent transfer under §§ 547 and 548 and entered a stay pending the lower court's decision on the transfer issue.

On remand, the bankruptcy court held that Harris had abandoned his § 547 claim because he had not addressed it in his brief and that, in any event, it was meritless because, under Chapter 7, a secured creditor like the County would have received 100 percent of its claim.

The bankruptcy court then considered Harris's claim that the tax foreclosure was fraudulent because Harris received less than the "reasonably equivalent value" for the properties under 11 U.S.C. § 548, which states in pertinent part that:

[t]he trustee may avoid any transfer . . . of an interest of the debtor in property . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer or obligation; and . . . was

insolvent on the date that such transfer was made.

11 U.S.C. § 548(a)(1)(B). The County argued that a tax foreclosure action should be considered a "reasonably equivalent value" under the statute because of the Supreme Court's decision in *BFP v. Resolution Trust Co.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), which held that the "reasonably equivalent value" of a foreclosed property is the price received at the foreclosure auction so long as the state's foreclosure requirements are met. *Id.* at 545–46, 114 S.Ct. 1757. Harris, on the other hand, maintained that a tax foreclosure without a public sale could not be considered similar to the foreclosure auction at issue in *BFP,* and that the transfer was fraudulent because he had received less than the reasonably equivalent value of the Properties.

In its March 11, 2003 decision, the bankruptcy court agreed with Harris's view of § 548, noting that *BFP* did not extend to "strict tax foreclosure proceedings [like Harris's] where property is transferred with little judicial oversight and without competitive bidding and a public sale." Indeed, the amount of a property owner's tax debt, the court noted, bears no relationship to the value of the property confiscated without public sale. The court observed, however, that based on the property values as stated in debtor's bankruptcy petition, the "taxes exceeded the Debtor's Schedule A value of 38 South Main Street by over 20% and of 323 State Street by almost 50%."[1] The court gave both

---

1. We note that this observation may be incorrect. In Schedule A of his bankruptcy petition, Harris listed the value of his interests in 323 State Street as $90,000 and 38 South Main as $250,000, but Harris apparently filed a Second Amended Schedule A at some point—though the record is not very clear on this point—in which he claimed interests in the Properties of $260,000 (323 State Street)

and $510,000 (38 South Main). We also note that the parties estimated the respective market values of the Properties as between $200,000 and $250,000 (323 State Street) and $420,000 and $510,000 (38 South Main). When the County sold the Properties, it received approximately $240,000 for 323 State Street and approximately $450,000 for 38 South Main. Finally, while the record is un-

Harris and the County the opportunity to file documents that would prove amounts or values other than those stated in record.

While Harris did file appraisals of the Properties pursuant to the bankruptcy court's order, it does not appear that the County ever filed any documentation regarding the § 548 claim despite having obtained an extension of time from the bankruptcy court to do so. In subsequent submissions, the County ignored the § 548 issues and instead objected to Harris's proposed reorganization plan, required under the bankruptcy statutes for providing payments to creditors. The County asserted that Harris had not submitted all of the schedules for his expenses and that the proposed plan—then the seventh one he had submitted-was not feasible because, *inter alia*, it listed no living expenses other than $109 per month for food and failed to include the payment of post-petition property taxes.

On May 29, 2003, the United States Trustee moved to dismiss the voluntary bankruptcy petition pursuant to 11 U.S.C. § 1307(c) on the grounds that Harris had failed to make timely payments on his reorganization plan and that his unreasonable delay was prejudicial to creditors. Section 1307(c) provides in pertinent part that "on request of a party in interest or the United States trustee and after notice and a hearing, the court . . . may dismiss a case under this chapter . . . for cause, including . . . unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c)(1).

On June 23, 2003, the bankruptcy court held a hearing on the Trustee's motion to dismiss. Present at the hearing were the County, the Trustee, Harris and counsel for several of Harris's other creditors. At the beginning of the hearing, the bank-ruptcy court inquired into whether Harris was current with his tax filings, as it had asked at the last hearing. Harris responded that the tax filings were not complete. The Court noted that these failures betrayed a lack of seriousness on Harris's part to carry out his duties under the bankruptcy laws and merely evinced his intent to delay.

Harris objected to the court's characterization of the proceedings on the ground that the first issue to be decided was ownership of the Properties and that after that issue was decided, he could take care of the rest of the administration of the estate. The bankruptcy court rejected this argument and explained:

> I will grant [the Trustee's] motion and note for the record the delay, the failure to pay ongoing taxes, the failure to file tax returns. . . . All of this to me says delay and trying to drag this case out. If you were serious about doing this, then you would have satisfied your duties as a debtor in this Court. . . .

While counsel for creditor Upstate Coin Laundry was present and sought to confirm the reorganization plan proposed by Harris because it would "provide[ ] for the payment of the taxes on our property," the Court did not inquire what prejudice they would suffer from, nor whether they opposed, the motion to dismiss. Harris's other creditors were not at the hearing and also do not appear to have been asked whether they objected to the dismissal or would suffer prejudice therefrom.

After the hearing, on July 21, 2003, the bankruptcy court then dismissed Harris's Chapter 13 petition without prejudice. The order indicated that all parties had been present, that Harris had acknowledged his failure to file all federal and

clear as to the exact amount of pre-petition taxes debtor owed to the County on the Prop-erties, the amount appears to fall somewhere between $430,000 and $500,000 for both.

state income tax returns and to pay all post-petition real property taxes and that the delay was prejudicial to creditors. The bankruptcy court subsequently rejected Harris's motion to reconsider after a hearing on the issue.

As the foregoing makes clear, the court never decided the § 548 transfer issue. At some point during the pendency of this case in the lower courts, the County auctioned off 323 State for $240,000 and 38 South Main for $450,000, the proceeds from which are now in an escrow account.

Harris appealed both the dismissal of his Chapter 13 case and the denial of his motion to reconsider to the district court, but did not include a transcript of the proceedings below. In a June 14, 2004 order, the district court explained that, without the June 23 transcript of the proceedings before the bankruptcy court as required under Bankruptcy Rule 8006, it could not determine whether that court's findings of fact were clearly erroneous. Moreover, it could not conclude whether the bankruptcy court had abused its discretion in denying the motion to reconsider without a transcript of that specific hearing as well. Accordingly, the district court dismissed the appeal under Rule 8001 without considering the merits.[2]

In dicta, however, the district court noted that the dismissal order appeared sufficient on its face because the order indicated that Harris had acknowledged his failure to file tax returns or pay property taxes and that the finding of prejudice to creditors from the resulting delay was not clearly erroneous. The court also noted

that the exhibits in the record before the bankruptcy court demonstrated that Harris had not paid post-petition property taxes or filed his tax returns.

Harris sought reconsideration of the district court's dismissal of his appeal, but missed the filing deadline by one day. Harris made no request to extend the deadline and did not provide any "facts or argument that would justify accepting his late filing based on excusable neglect under Bankruptcy Rule 9006(b)(1)." Accordingly, on February 16, 2005, the district court denied his motion for reconsideration.

Harris timely appeals from the dismissal of his appeal and the denial of his motion for reconsideration.

## DISCUSSION

■■■ We review a district court's dismissal of a bankruptcy appeal on procedural grounds for abuse of discretion. *See In re Lynch*, 430 F.3d 600, 603 (2d Cir. 2005) (per curiam); *see also In re Tampa Chain Co.*, 835 F.2d 54, 55 (2d Cir.1987) (per curiam) (holding that the district court's "decision to dismiss will be affirmed unless it has abused its discretion"). A district court abuses its discretion when it "applies legal standards incorrectly or relies upon clearly erroneous findings of fact, or proceed[s] on the basis of an erroneous view of the applicable law." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 398 (2d Cir.2004) (internal quotation marks and citation omitted; alteration in original).[3]

---

**2.** While the court did not expressly invoke Rule 8001 as authorizing dismissal, the case to which the court cited to demonstrate its authority to dismiss for failure to include the relevant transcripts explicitly relied on Rule 8001. *See Frostbaum v. Ochs*, 277 B.R. 470, 473 n. 1 (E.D.N.Y.2002).

**3.** In his main brief on appeal, Harris does not address the district court's dismissal of his appeal and instead directs all of his arguments to the merits of the bankruptcy court's dismissal of his Chapter 13 petition under § 1307(c). Harris, however, does address the dismissal in his reply brief. We generally do

## A. Requirements under Bankruptcy Rule 8006

Before reaching the question of what standard the district court should have applied in dismissing Harris's appeal, we must first address Harris's argument that he had not violated any procedural rule such that the district court could have sanctioned him at all, let alone dismissed his appeal. Indeed, in his reply brief, Harris asserts that the district court erred in dismissing the appeal because the transcript from the June 23 hearing was not necessary to the appeal and contained only oral argument, not any testimony.

Bankruptcy Rule 8006 governs what documents are required to perfect an appeal. It states that in pertinent part,

the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal.... The record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court.... If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its cost.

Fed. R. Bankr.P. 8006. While the Rule does not expressly mandate that the "record on appeal" include all transcripts of the proceedings below, its provisions make clear that those documents which include "findings of fact" or "conclusions of law of the court" are deemed part of the record, including any transcripts, for which the Rule makes express cost provisions.

While Harris is correct that the June 23 hearing contained oral argument, not testimony, by the parties, it also contained the bankruptcy judge's findings of fact and the evidence on which he made his conclusions, namely Harris's admissions that he was behind in filing his tax returns for 2001, that he had not paid his post-petition taxes and that he had access to funds from which he could pay those amounts. Moreover, the order from the bankruptcy court dismissing the case specifically mentioned the June 23 hearing. Accordingly, without a transcript of the proceedings, the district court did not have a complete record to review the bankruptcy court's findings. Because Harris violated Rule 8006, we must now examine whether the district court judge properly dismissed the appeal because of that violation.

## B. Standard of Review under Rule 8001

Rule 8001, provides, *inter alia*, that "[a]n appellant's failure to take any step [including those outlined in Rule 8006] other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems

---

not consider issues raised in a reply brief for the first time, *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999), because "if an appellant raises a new argument in a reply brief an appellee may not have an adequate opportunity to respond to it." *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir.2001). We do not suffer from that problem here. In its own brief, the County addresses only the question of whether the district court's dis-

missal was an abuse of discretion and no other issues. There is, then, no unfairness to the appellee in considering the issue, which has been briefed fully by both parties. This issue, moreover, was the only issue the district court decided and is accordingly the only issue properly before this Court. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 90 (2d Cir.2004) ("In general, we refrain from analyzing issues not decided below.").

appropriate, which may include dismissal of the appeal." Fed. R. Bankr.P. 8001(a).[4] The rule makes clear that a district court enjoys discretion to dismiss an appeal in all cases except where the debtor does not file a timely notice of appeal, in which case the court has no choice but to dismiss the case.

We recently addressed the standard for Rule 8001 dismissals in *In re Lynch,* 430 F.3d at 605. In that case, the district court dismissed an appeal as untimely because the debtor had not filed the record and designation of issues on appeal pursuant to Rule 8006 in a timely manner, even after having received a valid extension. We noted that "[b]y its terms, [Rule 8001] does not set standards for when dismissal is appropriate" and that, as a result, some circuits had established conditions to constrain a district court's discretion to dismiss a case for failure to abide by a procedural rule. *Id.* We nevertheless declined to adopt any definitive standard in *Lynch,* however, because we found that the petitioner's failure to file a timely record and designation on appeal was governed by the "excusable neglect" standard of Federal Rule of Bankruptcy Procedure 9006(b)(1) ("Rule 9006"), which governs the enlargement of time for deadlines in bankruptcy proceedings.[5] *See id.* We, thus, left open the possibility "that dismissal would be an unwarranted sanction for some errors, and hence, impermissible under Rule 8001(a)."

*Id.; see also In re Tampa Chain Co.,* 835 F.2d at 55 (holding that, in considering dismissal of an appeal, "the court should exercise discretion to determine whether dismissal is appropriate in the circumstances" presented by the case).

While we have declined to determine what considerations should govern a district court's dismissal under Rule 8001, several of our sister courts have undertaken such an analysis. The Fourth Circuit has cabined district courts' discretion to dismiss appeals under Rule 8001. In *Resolution Trust Corp. v. SPR Corp. (In re SPR Corp.),* 45 F.3d 70 (4th Cir.1995), a panel of the Fourth Circuit, which included Justice Powell (retired), held that for late, non-jurisdictional filings in bankruptcy court, a district court before dismissing an appeal under Rule 8001 must consider whether to:

(1) make a finding of bad faith or negligence; (2) give the appellant notice or an opportunity to explain the delay; (3) consider whether the delay had any possible prejudicial effect on the other parties; or (4) indicate that it considered the impact of the sanction and available alternatives.

*Id.* at 72. The Ninth Circuit has also held that in the Rule 8006 context, a district court should consider a party's bad faith and the availability of alternative sanctions

---

4. Rule 8001 was amended effective October 17, 2005, but the new provisions do not affect this case in any way.

5. Rule 9006 "permits some filings or other acts to be accepted notwithstanding a missed deadline. It states that, on the motion of the party, the court may, for cause shown and in its discretion, 'permit the act to be done where the failure to act was the result of excusable neglect.'" *Lynch,* 430 F.3d at 603 (quoting Fed. R. Bankr.P. 9006(b)(1)). On its express terms, the Rule deals with the timeliness of a filing, not its content.

While Rules 8001 and 9006 both may govern conduct required of the debtor under Rule 8006, *Lynch* 430 F.3d at 605, it is clear that the Court need only concern itself here with Rule 8001. Unlike the situation in *Lynch,* Harris *did* file a timely record and designation. Because it was the contents of the filings that were at issue rather than the timeliness of the filings, Rule 9006, which concerns when a court should excuse a missed deadline, is not applicable. *See id.*

except in the most egregious of circumstances before dismissing the appeal under Rule 8001. *In re Fitzsimmons*, 920 F.2d 1468, 1474 (9th Cir.1990). Outside of the specific Rule 8001 context, other courts have likewise permitted bankruptcy appeals to continue despite a party's failure to file a complete and timely non-jurisdictional designation of record on appeal. *In re Comer*, 716 F.2d 168, 177 (3d Cir.1983) (no error where "[t]he district court declined to dismiss the appeal ... [having found] no prejudice to debtors or bad faith on the part of the creditors"); *In re Winner Corp.*, 632 F.2d 658, 661 (6th Cir.1980) ("This power (to dismiss), however, should not be exercised generally unless the omission arose from negligence or indifference of appellant" or bad faith.) (internal quotation marks omitted); *cf. In re Beverly Mfg. Corp.*, 778 F.2d 666, 667 (11th Cir. 1985) (adopting, in case where untimely appellate briefs were filed pursuant to Bankruptcy Rule 8009, "the position of the Sixth Circuit, which has held that dismissal is proper only when bad faith, negligence or indifference has been shown").[6]

The Fifth Circuit, in contrast, has taken a more flexible approach. In *In re CPDC Inc.*, 221 F.3d 693 (5th Cir.2000), the court considered whether the district court had abused its discretion in dismissing an appeal because the petitioner had failed to file a timely statement of issues. The court did not adopt a definitive list of factors as it noted other circuits had done in reviewing dismissals under Rule 8001, but rather held that "in determining whether dismissal is an appropriate sanction, a district court should keep in mind that some infractions of the rules of bankruptcy procedure are harmless and do not merit dismissal; ... and that the primary goal of courts as enforcers of the bankruptcy rules should be to ensure the swift and efficient resolution of disputes pertaining to the distribution of the bankruptcy estate." *Id.* at 699–700. Under this flexible rubric, the court found that in the circumstances of the case, the district court had abused its discretion because there was no contention that the appellees were prejudiced by the failure, the district court had an adequate record upon which to decide the merits of the appeal and there was no indication of bad faith. *Id.* at 700–01.

The D.C. Circuit has also adopted a flexible rule similar to that of the Fifth Circuit. In *English–Speaking Union v. Johnson,* the court explained that two competing concerns framed its discussion. 353 F.3d 1013, 1021 (D.C.Cir.2004). On the one hand, the court noted the strong presumption in favor of deciding cases on the merits required that dismissal should be used only as a last resort. *Id.* On the

---

**6.** We recognize that some of the cases noted above (as well as later in this opinion) appear to conflict with our decision in *Lynch* in their determination that the untimely filing of a designation or statement under Rule 8006 should be governed not by the "excusable neglect" standard of Rule 9006 but by the terms of Rule 8001. *Compare Lynch*, 430 F.3d at 605 *with Resolution Trust Corp.*, 45 F.3d at 73 (analyzing failure to file timely statement of issues under Rule 8001); *In re Fitzsimmons*, 920 F.2d at 1474 (same); *In re Comer*, 716 F.2d at 177 (affirming district court's refusal to dismiss for failure to file timely designation of record and statement of issues under the precursor to Rule 8006); *In re Winner*, 632 F.2d at 661 (same). These cases, nevertheless, enumerate general standards for courts to use in determining when a dismissal under Rule 8001 is appropriate. While our specific holding in *Lynch* appears not to comport with the great majority of our sister courts, we need not address the potential conflict because, as explained above, this case does not involve the failure to file a timely submission but failure to file a specific component of what the district court deemed Rule 8006 required. Rule 9006 and *Lynch's* holding are therefore not at issue.

other, however, "district courts need powerful tools to manage their dockets, prevent undue delay, and sanction those who abuse the system." *Id.* Because of these competing concerns, the court declined to set forth any specific factors that district courts should consider but held that "district courts can achieve the proper balance . . . by considering the circumstances before them and explaining why it is in the interest of justice to dismiss rather than to proceed to the merits." *Id.* at 1022.

■■■ We agree with the flexible approach taken by the Fifth and D.C. Circuits and decline to adopt any fixed rules about what district courts must do in the Rule 8001 context. Although we recognize that the factors listed by the Fourth Circuit and other courts should ordinarily be considered by a district court when contemplating a Rule 8001 dismissal, we believe that a court should exercise its discretion given the factual circumstances of a particular case. Nevertheless, courts should endeavor to explain why it is in the interest of justice to all parties, including secured and unsecured creditors, to dismiss a bankruptcy appeal on procedural grounds rather than to continue to the merits of the appeal. And because dismissal is a harsh sanction, moreover, we generally require a district court to consider whether a lesser sanction would be appropriate. *Cf. Selletti v. Carey,* 173 F.3d 104, 111 (2d Cir.1999) (explaining that before a district court dismisses an action for failure to comply with a court order it must consider, among other things, "a sanction less drastic than dismissal"); *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999) (dismissal for discovery abuse is a drastic remedy that should only be imposed in extreme circumstances and after consideration of lesser sanctions). Courts should also take into consideration whether counsel's behavior

evinces bad faith or a pattern of negligence; whether any other parties were prejudiced by the errant litigant's conduct; and whether the litigant should be granted the opportunity to rectify the problem. Finally,

> [a]s part of this inquiry . . . district courts will generally need to provide notice of the potential dismissal and an opportunity for the errant litigant to explain its conduct. Based on that explanation, the court can then determine the appropriate sanction and articulate its reasons for selecting its chosen course of action.

*English–Speaking Union,* 353 F.3d at 1022. The above considerations, we believe, achieve the requisite balance between deciding cases on the merits and allowing district courts to control their dockets and prevent delay and abuse of the legal process.

### C. The Standard Applied to Harris

■■■ Applying the above considerations to the instant case, we note that the district court did not give Harris notice of its plan to dismiss the appeal and did not consider any sanction short of dismissal. To be sure, Harris's failure to designate the transcript made it difficult, if not impossible, for the district court to determine whether the bankruptcy court had acted in error. Although Harris is an attorney who practices bankruptcy law, he was proceeding *pro se* before the district court. Moreover, as is clear from Harris's argument in this Court, he did not believe the transcript was necessary because it contained only argument, not testimony. In these circumstances, dismissing the appeal without determining whether a lesser sanction would have been appropriate or giving Harris notice or an opportunity to

respond was an abuse of discretion.[7]

Several other considerations support our holding here. First, we note that the district court did not give Harris any opportunity to rectify the situation by obtaining the June 23 transcript and placing it in the record before the court. In his motion for reconsideration, Harris indicated his willingness to do so. Furthermore, in the very case upon which the district court relied for its authority to dismiss the appeal, that court did not do so. In *Frostbaum*, the debtor failed to include the record of the hearing that served as the basis of the ruling, but the district court obtained the transcripts pursuant its powers under Bankruptcy Rule 8019, which permits a district court to suspend the requirements of certain bankruptcy rules in the interest of expediting a case. *See Frostbaum* 277 B.R. at 473 n. 1; Fed. R. Bankr.P. 8019. We, of course, do not mean this observation to require a district court to allow every errant litigant an opportunity to rectify the situation or to force a court to remedy a problem *sua sponte*, but we think the ability of a party or the court to cure a defective record is a consideration that the district court should assess on remand on the particular facts of this case.

Second, we are concerned with the dismissal here because serious questions on the merits remain unresolved, particularly the § 548 determination that the bankruptcy court never ultimately reached. The County here appears to have reaped a rather large windfall—in excess of $300,-000—at the expense of other, unsecured creditors. Thus, in weighing the prejudice of dismissing this appeal, the court below should be mindful that there is a strong presumption of not allowing a secured creditor to take more than its interest. *Cf. In re French*, 440 F.3d 145, 152 (4th Cir. 2006) (noting that the Bankruptcy Code's avoidance provisions, including 11 U.S.C. § 548, protect a debtor's estate from depletion to the prejudice of the unsecured creditor). From the County's foreclosure and auction of the Properties, it appears that the County has received excess moneys that could have satisfied other creditors.

Third, Harris argues that much of the delay below is attributable to the County, not him. Our examination of the record reveals that the case has suffered unquestionably long delays, but this Court notes, for instance, that the County appears not to have responded to the bankruptcy court's order regarding the Properties' valuation for the resolution of the § 548 claim. Thus, while we take no views on the matter, the district court should assess, if it reaches the merits of the appeal on remand, the relative fault of both parties with respect to delay when determining whether the bankruptcy court properly dismissed the case.

Finally, Harris explains that his failure to pay his taxes is inextricably intertwined with the disputed title to the Properties. He has always maintained that the resolution of the § 548 fraudulent transfer issue would enable him to pay down the taxes he owes as well as other incurred debts. We do not express an opinion whether the transfer issue should control, but we nevertheless note that the bankruptcy court never explained why resolution of the transfer issue could not be done expedi-

---

7. We are mindful that the district court in dicta indicated that the record appeared to support the bankruptcy court's dismissal. Nonetheless, we remand the case so that the district court can give Harris the opportunity to respond to the court's concerns about his delay and determine whether Harris should have an opportunity to cure or whether a lesser sanction is warranted.

tiously—which would likely have ended the alleged delay on Harris's part in adopting or rejecting a reorganization plan, as well as put to rest any of Harris's arguments that his plan was only feasible upon resolution of that issue. Thus, on the specific facts of this case, these considerations, we believe, should be weighed by the district court in its review of the bankruptcy court's determination (and reexamined by the bankruptcy court if the matter is remanded to it).

## CONCLUSION

Given our finding that the district court abused its discretion in dismissing debtor's appeal, we do not need to reach Harris's other contentions. For the foregoing reasons, the judgment of the district court is VACATED and REMANDED for proceedings not inconsistent with this opinion.