09-3589-cv
Campo v. Sears Holdings

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6ᵗʰ day of April, two thousand ten.

PRESENT:  ROBERT D. SACK,
          REENA RAGGI,
          PETER W. HALL,
                              *Circuit Judges.*

------------------------------------------------------------------------
FRED P. CAMPO, Individually and On Behalf of All Others Similarly Situated, PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, MISSISSIPPI PUBLIC EMPLOYEES' RETIREMENT SYSTEM,

                              *Plaintiffs-Appellants*,

                    v.                              No. 09-3589-cv

SEARS HOLDINGS CORPORATION, EDWARD S. LAMPERT, JULIAN DAY,

                              *Defendants-Appellees*.
------------------------------------------------------------------------

APPEARING FOR APPELLANTS:    JAY W. EISENHOFER (James J. Sabella, Grant & Eisenhofer P.A., New York, New York, Mark C. Gardy, James S. Notis, Gardy & Notis, LLP, Englewood Cliffs, New Jersey, Samuel H. Rudman, David A. Rosenfeld, Coughlin Stoia Geller Rudman & Robbins LLP, Melville, New York, *on the brief*), Grant & Eisenhofer P.A., New York, New York.

APPEARING FOR APPELLEES:        PAUL VIZCARRONDO, JR. (Emil A. Kleinhaus, Jonathan E. Goldin, *on the brief*), Wachtell, Lipton, Rosen & Katz, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on July 22, 2009, is AFFIRMED.

Plaintiffs, former shareholders of Kmart Holding Corporation ("Kmart"), individually and on behalf of all others similarly situated, sued defendants Sears Holdings Corporation ("Sears"), the legal successor to Kmart, Edward S. Lampert, the former chairman of Sears, and Julian Day, the former chief executive officer of Kmart, for violations of the Securities Exchange Act of 1934 ("Exchange Act"). Plaintiffs now appeal the dismissal of their complaint with prejudice. We review an order of dismissal de novo, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in plaintiffs' favor. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008). We will affirm the district court only where plaintiffs fail to "allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); accord Ashcroft v. Iqbal, 129 S. Ct. at 1949-50. In applying these principles to this appeal,

we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Section 10(b) and Rule 10b-5 Claims

Plaintiffs submit that defendants violated section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by understating the post-reorganization value of Kmart's real estate assets in order to depress the company's stock price and permit defendants to purchase shares at reduced cost.  On appeal, plaintiffs contend that the district court erred in concluding that (1) plaintiffs "fail[ed] adequately to allege that the fair market value of Kmart's real estate [as of April 30, 2003,] was materially more than $4.623 billion" and thus identified no actionable misstatement,[1] Campo v. Sears Holdings Corp., 635 F. Supp. 2d 323, 331 (S.D.N.Y. 2009); and (2) even if plaintiffs had adequately alleged a material misstatement, their complaint failed to give rise to a strong inference of scienter.  Because we agree that plaintiffs have failed sufficiently to allege scienter, we affirm without reaching the first point.[2]

To state a claim under section 10(b) or Rule 10b-5, a plaintiff must plead, inter alia, that defendant "acted with scienter, a mental state embracing intent to deceive, manipulate,

_____

[1] We agree with the district court's conclusion that defendants never represented the fair market value of Kmart's real estate to be $10 million.  To survive the motion to dismiss, plaintiffs therefore must have alleged facts sufficient to support the claim that the value of Kmart's real estate was materially more than the $4.623 billion value set forth in Kmart's June 16, 2003 Form 10-Q.

[2] For the same reason, we do not reach defendants' contention that plaintiffs failed adequately to allege that they suffered damages.

3

or defraud." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007) (internal quotation marks omitted). This requirement may be satisfied by "alleging facts (1) showing that the defendant[] had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Because plaintiffs allege securities fraud, they are also subject to the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737. Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter. 15 U.S.C. § 78u-4(b)(2). A complaint gives rise to such an inference "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 324.

a.      Lampert's Alleged Admissions

In support of their contention that they have adequately pleaded scienter, plaintiffs cite Lampert's alleged admissions that he knew that Kmart's real estate was undervalued at the time he became chairman of the company. We easily conclude that these "admissions," which appear in articles in Fortune and Business Week magazines, fail to give rise to a strong inference of scienter. Neither of the articles explicitly attributes to Lampert any statement regarding the fair market value of Kmart's real estate. As the district court properly concluded, the contents of the articles are therefore not admissions, but instead mere "speculation about . . . Lampert's opinions years earlier." Campo v. Sears Holdings Corp.,

4

635 F. Supp. 2d at 333; see also Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1004 (2d Cir. 1988) ("It is not enough to quote press speculation about defendants' motives. . . . Such allegations simply do not provide . . . specific, well-pleaded facts . . . ." (internal quotation marks omitted)). Even if the statements at issue could be deemed admissions, they provide no basis for ascertaining the specific value Lampert attributed to Kmart's real estate and thus cannot support an inference that Lampert knew that the value of the real estate was materially more than $4.623 billion. For the foregoing reasons, the contents of the Fortune and Business Week articles cannot support a strong inference of scienter.

b. Motive and Opportunity

Plaintiffs submit that they have pleaded scienter by alleging that defendants had motive and opportunity to commit the fraud alleged. Neither party disputes that Lampert and Day had opportunity. The only issue on appeal is thus whether plaintiffs have sufficiently alleged motive. We conclude that they have not.

"Sufficient motive allegations entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001) (internal quotation marks omitted). On examination, plaintiffs' allegations that Lampert and Day concealed the true value of Kmart's real estate in order to purchase stock at depressed prices manifest no concrete benefits sufficient to satisfy this standard. Because the options Lampert and Day exercised during the class period – and thus the prices at which they acquired Kmart shares – were negotiated months earlier, Lampert and Day's desire to acquire stock at artificially low prices cannot logically have been a

5

motivating factor in their alleged misrepresentation of the value of Kmart's real estate. To the contrary, having established and exercised their rights to acquire Kmart stock at prices ranging from $10 to $20 per share, Lampert and Day's only economically rational motive would have been to disclose any information that might increase the company's stock price. Plaintiffs' conclusory allegations concerning Lampert and Day's motives to misrepresent the value of Kmart's real estate therefore do not support a strong inference of scienter.[3] See Kalnit v. Eichler, 264 F.3d at 140-41 ("Where plaintiff's view of the facts defies economic reason, . . . [it] does not yield a reasonable inference of fraudulent intent." (omission and alteration in original; internal quotation marks omitted)).

c.      Conscious Misbehavior or Recklessness

Plaintiffs' contention that they have alleged scienter by demonstrating defendants' conscious misbehavior or recklessness is similarly unavailing. Relying heavily on the personal knowledge of confidential witnesses,[4] plaintiffs contend that they have alleged that

---

[3] To the extent plaintiffs also assert that Lampert and Day understated the value of Kmart's real estate to "prevent [their] earlier machinations from coming to light until a reasonable period of time had passed," Compl. ¶ 146, this allegation is similarly deficient. See Kalnit v. Eichler, 264 F.3d at 140 (characterizing an "avoidance of personal liability motive" as "too speculative and conclusory to support scienter").

[4] To assist it in resolving defendants' motion to dismiss, the district court ordered that the confidential witnesses referenced in the complaint be deposed. Plaintiffs challenge the district court's consideration of that deposition testimony. Because they do so only in their reply brief, however, the argument is waived. See In re Harris, 464 F.3d 263, 268 n.3 (2d Cir. 2006); JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 428 (2d Cir. 2005). Even assuming the argument is not waived, we conclude that it lacks merit. The anonymity of the sources of plaintiffs' factual allegations concerning scienter frustrates the requirement, announced in Tellabs, that a court weigh competing inferences to

6

Lampert and Day either knew or should have known the true value of Kmart's real estate because they had access to Real Estate Marketing Strategy ("REMS") reports that contained "non-public detailed information concerning the value of [Kmart's] leaseholds." Appellants' Br. at 33. Accordingly, plaintiffs argue that "any public statements that undervalued the real estate would have been a result of conscious misbehavior or recklessness." Id.

Although circumstantial evidence of conscious misbehavior or recklessness may support a strong inference of scienter, "the strength of the circumstantial allegations must be correspondingly greater if there is no motive." ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198-99 (2d Cir. 2009) (internal quotation marks omitted). That is not this case. See Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000) (discussing what constitutes recklessness sufficient for section 10(b) liability).

First, neither of the confidential witnesses who are former Kmart real estate executives offered testimony supporting plaintiffs' allegations that the REMS reports contained information regarding the value of Kmart's leaseholds, much less that the information in the reports indicated that the value of the leaseholds was $9 billion or $18 billion. Confidential

determine whether a complaint gives rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 314; see also Higginbotham v. Baxter Int'l Inc., 495 F.3d 753, 757 (7th Cir. 2007). Because Fed. R. Civ. P. 11 requires that there be a good faith basis for the factual and legal contentions contained in a pleading, the district court's use of the confidential witnesses' testimony to test the good faith basis of plaintiffs' compliance with Tellabs was permissible. The court made no credibility determinations, nor did it weigh competing testimony. To the contrary, it relied upon the deposition testimony for the limited purpose of determining whether the confidential witnesses acknowledged the statements attributed to them in the complaint. Under these circumstances, we identify no error.

7

witness 1 ("CW1") testified that the REMS reports, which did not identify leasehold values for particular stores, were not used to determine the value of Kmart's real estate. Indeed, he noted that one "c[ould] make no assumption on value based on the data contained in [such] report[s]." CW1 Dep. at 131. Confidential witness 3 ("CW3") averred that, to his knowledge, no REMS report ever ascribed an overall value to Kmart's real estate.

Second, although CW1 confirmed that a Kmart officer or board member could obtain access to any company information – including REMS reports – on request, he admitted that he had no knowledge of whether Lampert or Day actually accessed or reviewed the reports. Further, CW1 expressly disclaimed the allegation, attributed to him in the complaint, that, "based on information obtained from REMS, reports as to the leasehold value of each store location were prepared for senior executives of Kmart." Compl. ¶ 31.

Finally, CW1 and CW3, neither of whom had any direct contact with Lampert or Day, testified that they had no personal knowledge of Lampert and Day's opinions regarding the value of Kmart's real estate, nor did they have any reason to believe that Lampert or Day had access to information about the real estate that Rockwood Gemini, Kmart's third-party real estate appraiser during bankruptcy, lacked.

Even assuming that Lampert and Day had access to, and reviewed, the REMS reports, the confidential witness testimony discussed precludes us from concluding that an inference of scienter is "cogent and at least as compelling as [the] opposing inference" that Lampert and Day's assessments of the value of Kmart's real estate were consistent either with the value determined by Rockwood Gemini or that published in Kmart's June 16, 2003 Form 10-

8

Q.[5]  Accordingly, we conclude that plaintiffs' complaint fails to give rise to a strong inference of scienter and that dismissal of the section 10(b) and Rule 10b-5 claims was proper.[6]

### 2.    Section 20(a) Claims

Plaintiffs allege control person liability under section 20(a) of the Exchange Act. See 15 U.S.C. § 78t(a).  Their failure to state a claim under section 10(b), however, precludes relief under section 20(a).  See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1472 (2d Cir. 1996) ("In order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person . . . .").  We therefore affirm the dismissal of the section 20(a) claims.

### 3.    Leave To Amend

Plaintiffs challenge the district court's dismissal of their complaint with prejudice "without any further opportunity for argument concerning leave to amend." Appellants' Br.

---

[5] No different conclusion is compelled by plaintiffs' contention that "[e]ven without . . . evidentiary support, Lampert and Day, as high-level executives and directors of Kmart, can be presumed to have knowledge of the multi-billion dollar value of Kmart's real estate holdings."  Appellants' Br. at 33.  To say that Lampert and Day possessed such knowledge hardly proves that they knew or should have known the value of Kmart's real estate to be materially more than $4.623 billion.

[6] In light of plaintiffs' failure sufficiently to allege scienter as to Lampert and Day, we identify no error in the district court's dismissal of plaintiffs' claims against Sears.  While there are some instances in which a plaintiff may allege scienter as to a corporate defendant without alleging scienter as to an individual named defendant, see Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 192 (2d Cir. 2008), this is not such a case.  The basis for plaintiffs' allegations of scienter as to Sears is the provision of REMS reports to senior management.  As we have observed, however, plaintiffs have not alleged facts sufficient to give rise to a strong inference that the REMS reports contained information demonstrating that the true value of Kmart's real estate was materially more than $4.623 billion.

at 41. We review the denial of leave to amend for abuse of discretion. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 108. While plaintiffs subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) are generally allowed "at least one opportunity to plead fraud with greater specificity," id., "it is within the sound discretion of the district court to grant or deny leave to amend," McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). Nowhere in their opposition to the motion to dismiss did plaintiffs request leave to amend. While plaintiffs attempted to make such an application at oral argument, the district court declined to entertain the application at that time, and plaintiffs appear not to have pursued the matter further. "[W]e will not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought." Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 89 (2d Cir. 1999) (internal quotation marks omitted). Even assuming that plaintiffs sought leave to amend during oral argument on the motion to dismiss, however, plaintiffs provide no explanation of what they would allege in an amended complaint to save their claims. Instead, they simply assert, in conclusory fashion, that leave to amend is warranted because the confidential witnesses' "deposition testimony and exhibits demonstrate that [defendants] acted with scienter." Appellants' Br. at 41-42. For the reasons discussed, the confidential witness testimony does not support plaintiffs' allegations of scienter. In any event, in light of plaintiffs' failure to provide a specific explanation of the manner in which they propose to cure the defects in their complaint, we reject the claim that the district court erred in not granting leave to amend. See Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006).

4.    Conclusion

10

We have considered plaintiffs' remaining arguments on appeal and conclude that they are without merit.  For the foregoing reasons, the July 22, 2009 judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court
