20-3865-bk
*Gunsalus v. County of Ontario*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2021

(Argued December 16, 2021; Decided June 27, 2022)

No. 20-3865-bk

BRIAN L. GUNSALUS, GLIEE V. GUNSALUS,

*Plaintiffs-Appellees,*

v.

COUNTY OF ONTARIO, NEW YORK

*Defendant-Appellant.*[*]

Appeal from the United States District Court
for the Western District of New York
No. 20-cv-6134
Frank P. Geraci, Jr., Chief Judge, Presiding.

Before: CABRANES, PARKER, and LEE, *Circuit Judges*.

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

Defendant-Appellant, County of Ontario, appeals from a judgment of the United States District Court for the Western District of New York (Geraci, J.). Plaintiffs-Appellees sought to set aside the loss of their home to the County as a result of a tax lien foreclosure. The Bankruptcy Court set aside the transfer as a fraudulent conveyance on the grounds that it was not for "reasonably equivalent value." We **AFFIRM**.

—————————————————

KARI A. TALBOTT (Mark Wattenberg, *on the brief*), Legal Assistance of Western New York, Inc., *for Plaintiffs-Appellees.*

JASON S. DIPONZIO, Jason S. DiPonzio, P.C., *for Defendant-Appellant.*

—————————————————

BARRINGTON D. PARKER, *Circuit Judge*:

## BACKGROUND

This case arises from the foreclosure of a tax lien on a home in Ontario County, New York, owned by a married couple, Brian and Gliee Gunsalus, which resulted in the loss of title to their home. Following the foreclosure, the couple filed for protection under Chapter 13 of the Bankruptcy Code and filed a complaint seeking to avoid the loss of their home on the grounds that it was a fraudulent

conveyance. The Bankruptcy Court set aside the transfer, and the County appeals, raising two questions. The first is whether the Gunsaluses had standing to bring the avoidance proceeding. The second is whether the transfer effected by Ontario County in foreclosing on the lien was entitled to the presumption of having yielded "reasonably equivalent value" under Section 548 of the Bankruptcy Code. We answer yes and no, respectively.

The property in question is a modest family home. Mrs. Gunsalus has lived there her entire life and for the past fifteen years she and Mr. Gunsalus have lived there with their disabled adult son. They owned the home free and clear of mortgages. Due to a temporary reduction in Mr. Gunsalus' wages, the couple was unable to pay their real estate taxes, and the property became subject to a tax lien in the amount of unpaid taxes, $1,290.

After the lien remained unpaid for a number of months, the County instituted proceedings pursuant to Article 11 of New York's Real Property Tax Law ("RPTL") to enforce the lien. *See* RPTL §§ 1120 *et seq.* The County first included the property on the "List of Delinquent Taxes" filed in the County Clerk's Office. *See id.* § 1122. The County then filed a petition that commenced an *in rem* tax foreclosure action.

3

The Gunsaluses answered the petition and the County, in turn, moved for summary judgment. The Gunsaluses opposed that motion and cross-moved for an extension of time to pay the overdue taxes. The Ontario County Supreme Court denied the cross-motion and granted the County's motion. In June 2016, the Ontario County Supreme Court entered a final judgment of foreclosure awarding the County possession of, and title to, the home. The Gunsaluses were permitted to continue residing in the property pending the outcome of this litigation.

In May 2017, the County scheduled an auction of the property, which was sold to a third party for $22,000. The unpaid taxes, as noted, had amounted to $1,290. Pursuant to Article 11, the County pocketed the difference ($20,710), which meant that the Gunsaluses were required to forfeit to the County all of their accumulated equity.

These procedures, authorized by Article 11, are known as "strict foreclosure." Under "strict foreclosure," a creditor (here the County) asks the court to set a deadline for payment of a debt (here unpaid taxes) secured by the tax lien. If the lien is not paid by the deadline, as occurred here, the court enters an order transferring title and possession of the property to the creditor. There is no

4

foreclosure sale. Instead, the transfer occurs by court order and the transferee can then sell the property, as the County did.

Approximately three weeks before the auction, the Gunsaluses filed for protection under Chapter 13 of the Bankruptcy Code. To qualify under Chapter 13, a debtor must present a plan that, among other things, provides "adequate protection" to secured creditors like the County. Moreover, under Chapter 13, the County retains its lien until the tax arrears is paid in full. *See* 11 USC § 1325(a)(5)(B)(i)(I). Accordingly, the Gunsaluses' Chapter 13 plan provided that the County would receive all delinquent real estate taxes plus 12% interest. The Gunsaluses have made all delinquent tax payments, and they have continued to pay the new property taxes that have accrued since the judgment of foreclosure. During the bankruptcy proceedings, the Gunsaluses sought to avail themselves of the federal homestead exemption under Section 522(d)(1), which allows a debtor to exclude a home from the bankruptcy estate.

Shortly after the Chapter 13 filing, the Gunsaluses commenced a proceeding in Bankruptcy Court to set aside the transfer of their home to the County on the grounds that it was a fraudulent conveyance under Sections 548 and 522 of the Code. To establish a fraudulent conveyance, a debtor must prove, among other

things, that the debtor received less than a reasonably equivalent value in exchange for the transfer. *See* 11 U.S.C. § 548(a).

The Bankruptcy Court dismissed the complaint. Relying on the United States Supreme Court's opinion in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), the Bankruptcy Court held that a tax lien foreclosure proceeding conducted in compliance with Article 11 of the RPTL, like the mortgage foreclosure at issue in *BFP*, "is conclusively presumed to have provided reasonably equivalent value for purposes of 11 U.S.C. § 548(a)(1)(B)(i)." App'x 121.

On appeal, the District Court reversed. It reasoned that the mortgage foreclosure procedures at issue in *BFP* differed in material respects from the tax foreclosure procedures in the RPTL, explaining that

> [t]he Court in *BFP* expressly stated that state foreclosure laws had evolved to "avoid the draconian consequences of strict foreclosure," . . . but the RPTL has not. Unlike the foreclosure law in *BFP* and the "typical" state laws that the Supreme Court described before reaching its holding, the RPTL is a strict foreclosure regime that does not provide for a *pre-seizure* auction whereby the debtor may recovery equity. This difference between the RPTL and the state laws the *BFP* Court considered is significant to fraudulent conveyance analysis.

App'x 11 (footnote omitted). The District Court remanded the case to the Bankruptcy Court for trial on the fraudulent conveyance claim, where the Gunsaluses prevailed. The Bankruptcy Court found that the Gunsaluses had met

6

their burden of proving that the transfer of their home worth at least $22,000 in exchange for satisfaction of the $1,290 tax debt owed Ontario County was, among other things, not for "reasonably equivalent value."[1]

This appeal followed. *See* 28 U.S.C. § 158(d)(1). We review legal determinations *de novo. See In re Anderson*, 884 F.3d 382, 387 (2d Cir. 2018).

**DISCUSSION**

The County seeks reversal on two grounds. First, the County argues that the Gunsaluses lack standing to challenge the transfer of their property. Secondly, the County argues that the District Court erred by refusing to extend the holding of *BFP* from the mortgage foreclosure regime at issue there to the tax lien foreclosure regime at issue here.

**I**

We first turn to the County's contention that 11 U.S.C. § 522(c)(2)(B) of the Code deprived the Gunsaluses of standing to bring the avoidance proceeding. We

---

[1] Both the Bankruptcy Court and the District Court conducted proceedings in the present case alongside those raised by another similarly situation set of property owners, Joseph M. Hampton and Brenda S. Hampton. Before us, the County has also appealed the District Court's judgment in the Hamptons' case in Appeal No. 20-3868.

review this issue *de novo*. *See Bank Brussels Lambert v. Coan (In Re AROChem Corp.)*, 176 F.3d 610, 620 (2d Cir. 1999).

Section 522 of the Code authorizes debtors to exempt certain transfers of property. *See* 11 U.S.C. § 522. In Bankruptcy Court, the Gunsaluses claimed the federal homestead exemption, which allows a debtor to exempt a home from the bankruptcy estate. *See id.* § 522(d)(1). The Code provides that debtors who are eligible for the federal homestead exemption have standing to bring avoidance actions. *See id.* § 522(h); *Deel Rent-A-Car, Inc. v. Levine*, 721 F.2d 750, 754 (11th Cir. 1983).

The Code also provides, however, that exempted property is subject to certain limitations. Under Section 522(c)(2)(B), for example, certain exempted property remains liable for a tax lien:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case, except . . .
> > (2) a debt secured by a lien that is—
> > > (B) a tax lien, notice of which is properly filed.

The County contends that this Section renders the Gunsaluses ineligible for the federal homestead exemption and deprives them of standing. We disagree. Section 522(c)(2)(B) is straightforward. It merely requires that the Gunsaluses—

8

who seek to avoid the transfer of their home and *not* to avoid paying off the tax lien on that home—remain liable for the unpaid taxes even if the fraudulent conveyance action succeeds.

The Gunsaluses' Chapter 13 plan achieves just that result. In accordance with 11 U.S.C § 1325, the plan provides that the County retains its lien until its secured claim for tax arrears is paid in full. The plan affords the Gunsaluses five years to pay their delinquent real estate taxes in full and, as noted, they are paying off that obligation in accordance with the plan.

The County thus incorrectly interprets Section 522(c)(2)(B) as barring the Gunsaluses from claiming the federal homestead exemption, when it merely provides that exempt property remains liable for a tax lien. They are not, as the County would have it, attempting to avoid paying the tax lien; they are attempting to avoid a transfer of the property. Accordingly, Section 522(c)(2)(B) does not deprive the Gunsaluses of standing under Section 522(h).

**II**

**A**

Next, the County challenges the District Court's holding that the forfeiture of the Gunsaluses' home is not entitled to the presumption of an exchange for

9

"reasonably equivalent value" under Section 548(a). The Bankruptcy Code empowers debtors to set aside a transfer of property if (1) the debtor had an interest in property; (2) a transfer of that interest occurred on or within two years of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received "less than a reasonably equivalent value in exchange for such transfer[,]" 11 U.S.C. § 548(a); *see id.* § 522(h). The parties agree that this case concerns only the fourth element. *See id.* § 548(a)(1)(B)(i).

Of the three statutory terms—"reasonably," "equivalent," and value"—only the last is defined. "Value" means, for purposes of Section 548, "property, or satisfaction or securing of a . . . debt of the debtor," 11 U.S.C. § 548(d)(2)(A*). See BFP*, 511 U.S. at 535-36. To decide whether a transfer is for "reasonably equivalent value," courts consider "whether the debtor has received value that is substantially comparable to the worth of the transferred property." *Id.* at 548. Were we writing on a clean slate, we would easily conclude that the transfer here is not entitled to the legal presumption of being in exchange for "reasonably equivalent value." Common sense dictates that receipt of $1,290 for a property that was sold for $22,000 fails the "reasonably equivalent value" test. But the County contends

10

that this approach does not resolve this appeal because in the mortgage foreclosure context, the Supreme Court in *BFP* weighed in on the meaning of "reasonably equivalent value."

In *BFP*, the debtor, a partnership formed to buy a home in California, defaulted on its home loan payments. *Id*. at 533. The home later sold at a mortgage foreclosure sale for $433,000. *Id*. at 533-34. The debtor alleged that the home was actually valued at $725,000 and therefore challenged the sale as constructively fraudulent because the $433,000 it received was not, in the debtor's view, "reasonably equivalent" to the $725,000 it alleged the home was worth. *Id*. at 534.

The Supreme Court rejected that argument. It held that when a mortgage foreclosure sale is conducted in compliance with state law, the price received at that sale is the worth of the home—and, consequently, is "reasonably equivalent value." *Id.* at 545. In reaching this result, the Court emphasized that over the years, many state mortgage foreclosure laws had evolved from a system of strict foreclosures to one of foreclosures by sale. *See id.* at 541-42. Under the strict foreclosure regime (like that of RPTL Article 11), when a debtor had failed to make past due mortgage payments, after a certain time period, his entire interest in the property was forfeited, regardless of any accumulated equity. *Id.* at 541. By

11

contrast, foreclosures by sale—such as the sale in *BFP*—ensured that (1) foreclosures would occur by sale, (2) the proceeds of that sale would be used to satisfy the debt, and (3) any surplus over the debt would be refunded to the debtor. *See id.* Foreclosures by sale, the Court noted, emerged to "avoid[] the draconian consequences of strict foreclosure." *Id.* "Since then," the Court went on, "States have created diverse networks of judicially and legislatively crafted rules governing the foreclosure process, to achieve what each of them considers the proper balance between the needs of lenders and borrowers." *Id.* at 541-42. The Court adverted to the protections afforded by the current mortgage foreclosure laws of many states, including notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, strict adherence to prescribed bidding rules and auction procedure, and perhaps most importantly, foreclosure by sale with the surplus reverting to the debtor. *Id*. at 542**. "**When these procedures have been followed," the Court stated, "mere inadequacy of the foreclosure sale price is no basis for setting the sale aside . . . ." *Id.*

Ultimately, the Court held that "the consideration received from a noncollusive, real estate mortgage foreclosure sale conducted in conformance with

applicable state law" is conclusively presumed to be an exchange for "reasonably equivalent value" under 11 U.S.C. § 548(a). *Id.* at 533. Critical to that conclusion was the existence of an auction or sale which would permit some degree of market forces to set the value of the property even in distressed circumstances. *Id.* at 545-49. Because distressed properties that must be sold in the time and manner established by state mortgage foreclosure law are, the Court reasoned, "simply worth less," "reasonably equivalent value" in the mortgage foreclosure context is the foreclosure sale price itself. *Id.* at 549 (emphases omitted).

For those reasons, the Court explained, courts may not engage in the policy judgment of setting aside a mortgage foreclosure sale merely because the sale itself yielded a price that a court deemed inadequate. *See id.* at 542. The Court therefore rejected the debtor's view that the $433,000 home was actually worth $725,000. Instead, because the sale was conducted in compliance with state foreclosure-by-sale law, the home was worth $433,000. And because the value received by the debtor was equal to what the home was "worth," the Court held that the debtor had necessarily received "reasonably equivalent value" under Section 548.

**B**

In the County's view, *BFP* instructs that so long as state foreclosure law provides a debtor with (1) notice; (2) ample opportunity to cure; and (3) judicial oversight of the process, any foreclosure conducted in compliance with state foreclosure law necessarily yields "reasonably equivalent value" under Section 548. Here, the County contends that the RPTL contains those elements and that the transfer was conducted in compliance with the RPTL. Consequently, the County argues, *BFP* compels the conclusion that the transfer of the Gunsaluses' home was necessarily in exchange for "reasonably equivalent value."

For a host of reasons, we disagree. First, *BFP* itself rejects this contention. As Justice Scalia noted, *BFP* "covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (*to satisfy tax liens, for example*) may be different." 511 U.S. at 537 n.3 (emphasis added). That admonition is dispositive because, as we have seen, the strict foreclosure procedures under the RPTL offer far fewer debtor protections than the mortgage foreclosure procedures at issue in *BFP*. *See In re Smith*, 811 F.3d 228, 239 (7th Cir. 2016) (finding that a state's tax foreclosure protections must compare favorably to the mortgage foreclosure protections in *BFP* in order to receive a presumption of

14

"reasonably equivalent value"); *In re Hackler & Stelzel*, 938 F.3d 473, 479 (3d Cir. 2019) (same).

Although the County eventually sold the Gunsaluses' home, unlike the sale in *BFP*, the sale occurred *after* foreclosure. The transfer of the Gunsaluses' title, equity and all their interests in the home—the transfer that is relevant for Section 548(a)(1)(B) purposes—had already occurred by the time the County auctioned off the property. The auction was conducted solely for the benefit of the County and the amount of the proceeds bears no relation to the amount of the tax debt that led to the foreclosure. Moreover, under the RPTL, the County pockets the difference between the tax debt and the sales proceeds and is not accountable to other creditors for what it does with the proceeds. Suffice it to say that under no reasonable calculus do these procedures convey to the debtor value that is substantially comparable to the worth of the transferred property. *See BFP*, 511 U.S. at 548. In short, because the RPTL procedures are fundamentally different from the protections in place in *BFP*, that case is of little assistance to the County.

In addition, the County's position would produce results that are fundamentally at odds with the goals of bankruptcy law. Here, it would give the County a windfall at the expense of the estate, the other creditors, and the debtor—

15

which is precisely what the Code's fraudulent conveyance provisions are intended to prevent. *See In re Smith*, 811 F.3d at 238-39. For these reasons, we agree with the District Court that the transfer here should not be presumed to be in exchange for "reasonably equivalent value" under Section 548.

Finally, the County expresses concerns that our reading of Section 548 will hamper its ability to collect delinquent real property taxes. We are not insensitive to those concerns, but they do not carry the day on this appeal. First, Ontario County's legitimate interest in tax collection cannot overcome Congress' policy choice that "reasonably equivalent value" must be obtained for a transfer of a debtor's property in the bankruptcy context. *See In re Murphy*, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005). As we have previously admonished, "there is a strong presumption of not allowing a secured creditor to take more than its interest." *In re Harris*, 464 F.3d 263, 273 (2d Cir. 2006); *see also In re Smith*, 811 F.3d at 238 (noting that one goal of fraudulent conveyance law is to avoid a "windfall to one creditor at the expense of others"). Second, the County's concerns are unfounded in this case. As noted, the Gunsaluses have proposed in their Chapter 13 plan to pay the County all delinquent real estate taxes plus 12% interest. The Gunsaluses have also made all tax payments that have subsequently come due under the plan. Third,

16

even to the extent that today's ruling could, as the County cautions, introduce a degree of disruption to the County's collection of delinquent property taxes, that disruption arises from the interplay between the strict foreclosure regime of the RPTL and a Bankruptcy Code fashioned by Congress to afford relief to debtors. By its very nature, the Code upsets common and state law property interests and recalibrates the relationship between debtors and creditors.

For these reasons, we conclude that the District Court correctly held that the transfer of the Gunsaluses' home to the County was not entitled to the presumption of having provided "reasonably equivalent value" under Section 548.

## CONCLUSION

We **AFFIRM** the judgment of the District Court.